**In re the MARRIAGE OF Janet Brown SEEWALD, Appellant and Cross–Appellee,**

and

**Dean A. Seewald, Appellee and Cross-Appellant.**

**No. 99CA1154.**

Colorado Court of Appeals, Div. V.

March 15, 2001.

Law Office of Dorothy H. Tomasetti, Dorothy Tomasetti, Jeffrey Conley, Littleton, CO, for Appellant and Cross–Appellee.

Bell & Pollock, P.C., Bradley Pollock, Littleton, CO, for Appellee and Cross–Appellant.

Opinion by Judge TAUBMAN.

In this dissolution of marriage proceeding, Janet Brown Seewald (wife) appeals from the division of property and the denial of her requests for maintenance and attorney fees as set forth in the trial court's permanent orders. Dean A. Seewald (husband) cross-appeals from the permanent orders, claiming that this matter should have been dismissed because the parties were divorced pursuant to a Mexican decree. He also cross-appeals from the property division. We affirm in part, reverse in part, and remand for further proceedings.

The parties were married in Mexico in February 1990. They lived in homes in Mexico and Colorado, spending six months of the year in each, until their separation in 1996. Thereafter, wife remained in Colorado on a full-time basis.

Wife initiated this dissolution proceeding in 1997, asserting in her petition that both parties had been domiciled in Colorado for more than the requisite 90 days. She also requested that the court enter a decree of dissolution and award her both maintenance

and attorney fees. In his response, husband admitted wife's allegations of domicile. However, he further averred that the parties had entered into a prenuptial agreement that, among other matters, contained a waiver of maintenance by wife. He also requested that the court dissolve the marriage and further requested an equitable division of the marital property and a determination of the validity of the prenuptial agreement.

A magistrate entered temporary orders after a two-day evidentiary hearing in March 1999. During that hearing, husband, for the first time, asserted that a valid Mexican divorce decree dissolving the parties' marriage had been entered in October 1998. He argued that the Mexican decree had adjudicated all issues of property division, maintenance, and attorney fees and thus deprived the Colorado court of jurisdiction over the dissolution proceeding. He therefore moved for dismissal of the action.

In temporary orders, the magistrate did not rule upon the motion to dismiss, but found that husband had failed to establish the jurisdiction of the Mexican court to enter a binding decree and had presented no evidence of the decree or other support for his claim that the Mexican court had addressed maintenance or attorney fees. The magistrate therefore concluded that the purported Mexican decree did not constitute a jurisdictional bar to the entry of temporary orders. He then entered a temporary award of maintenance and attorney fees for wife.

The trial court upheld the magistrate's temporary orders, and husband appealed to this court. A division of this court upheld the temporary awards of maintenance and attorney fees. *In re Marriage of Seewald,* (Colo.App. No. 98CA1436, August 26, 1999)(not selected for publication). With regard to the Mexican decree, the division found that the existence of such a decree would be inconsistent with husband's own request for dissolution of the marriage. The court also noted that the record supported the magistrate's finding that husband had failed to present sufficient evidence or legal authority to establish that the court in Mexico had jurisdiction to enter a decree binding upon the parties so as to preclude the Colo-

rado court's entry of temporary orders concerning maintenance and attorney fees.

The matter proceeded to permanent orders, at which time the trial court again addressed the effect of the Mexican decree and found that it was not binding or valid. The court also determined that the parties' prenuptial agreement was unenforceable because there had been insufficient disclosure of the parties' assets and obligations. According to the court, the bulk of assets in husband's revocable trust were marital assets and not his separate property. The trial court awarded wife her separate assets valued at $43,000 and marital property valued at $56,485. The remainder of the property, which was worth approximately $1,200,000, was awarded to husband. The trial court denied wife's request for maintenance and refused to award attorney fees to either party.

This appeal followed.

## I. Validity of Mexican Divorce Decree

We first address husband's cross-appeal. He contends that the trial court erred when it failed to dismiss this action as a result of the Mexican decree. We disagree.

Initially, we note that, although the panel in the prior appeal indicated that husband had not established the validity of the Mexican divorce decree, that discussion was dictum. Wife does not urge on appeal that husband is barred from raising the validity of the Mexican decree by the law of the case doctrine.

■■■■ Colorado courts recognize a decree from a foreign country as valid and enforceable under the common law principle of comity. *Milhoux v. Linder,* 902 P.2d 856 (Colo. App.1995). The resolution of matters adjudicated in the foreign action will be *res judicata. Kraudel v. Benner,* 148 Colo. 525, 366 P.2d 667 (1961). However, conclusive effect may be given to a foreign judgment only if there has been an opportunity for a full and fair trial before a court of competent jurisdiction and only if the underlying claim for relief is not repugnant to the public policy of the state. *Milhoux v. Linder, supra; see also* Restatement (Second) Conflict of Laws

§ 104 comment (1971) (a judgment rendered in a foreign nation where there has not been adequate notice or an adequate opportunity to be heard may be effective in the country where rendered, but it will not be recognized or enforced in the United States).

■ Further, where a party relies upon the judgment of a court of a foreign state as *res judicata*, such party must allege and prove proper jurisdiction of that court. *People v. Madden*, 104 Colo. 252, 90 P.2d 621 (1939).

■ Initially, we note that the two exhibits related to the Mexican proceeding and the resulting decree introduced at the permanent orders hearing do not comply with the requirements set forth in C.R.C.P. 44(a)(2) for the authentication of foreign documents. One document appears to be an English translation of the divorce decree without a copy of the original in Spanish. The other appears to be an earlier order from the proceeding that is in Spanish with an accompanying English translation. Neither exhibit contains a certification or attestation establishing that it is more than a mere photocopy.

Thus, the admitted documents are insufficient to prove the existence or validity of the Mexican decree. *See Potter v. Potter*, 131 Colo. 14, 278 P.2d 1020 (1955) (where there is no attempt to comply with the provisions of C.R.C.P. 44, a decree entered by a foreign court is not admissible in evidence for any purpose); *see also* Caldwell, *Enforcing Foreign Country Judgments in Colorado*, 13 Colo. Law. 381 (March 1984) (a plaintiff who produces a properly authenticated judgment that appears on its face to be valid and final presents a prima facie case for recognition of the foreign judgment).

■ Even if we were to assume that husband had adequately met his initial burden to prove the Mexican decree, we conclude that husband did not establish that wife had received adequate notice of the Mexican proceeding. *See* Annot., *Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties*, 13 A.L.R.3d 1419 (1967) (some courts will decline to recognize a foreign decree despite the petitioning spouse's domiciliary status in the foreign country if it appears that there has been an improper notice to or service upon the defendant spouse). As stated in Restatement (Third) of Foreign Relations Law of the United States § 484(2) (1987):

Courts in the United States may, but need not, recognize a divorce, valid and effective under the law of the state where it was granted,

(a) if that state was, at the time of divorce, the state of domicile or habitual residence of one party to the marriage; or

(b) if the divorce was granted by a court having jurisdiction over both parties, and if at least one party appeared in person and the other party had notice of and opportunity to participate in the proceeding.

■ However, even if the party initiating the foreign divorce was a domiciliary of the foreign nation, the foreign decree need not be recognized if the foreign court did not have *in personam* jurisdiction over the defending spouse. Restatement (Third) of Foreign Relations Law of the United States § 484 comment b. Among the requisites for a reasonable exercise of jurisdiction in the foreign nation is that *in personam* jurisdiction will not exist unless the defending spouse is domiciled in or a resident of the foreign nation and/or has consented to the exercise of jurisdiction. *See* Restatement (Third) of Foreign Relations Law of the United States § 421(2); *see also* Restatement (Third) of Foreign Relations Law of the United States § 484 comment b (§ 421 applies in family law matters to issues of *in personam* jurisdiction).

Here, it was husband's burden to show what constitutes proper service of process under Mexican law and that wife received such service. *See Byrne v. Cooper*, 11 Wash. App. 549, 523 P.2d 1216 (1974) (stating general rule that the burden of proving the law of a foreign country is on the party relying on it); *see also* Annot., *Comment Note— Pleading & Proof of Law of Foreign Country*, 75 A.L.R.3d 177 (1977) (laws of another country must be pleaded and proved the same as other facts). Neither of the Mexican documents introduced by husband indi-

cated that wife was personally served with divorce papers in the Mexican proceeding, and the record contains wife's affidavit stating that she was not personally served. Wife additionally averred that she became aware of the Mexican divorce only after she and husband reconciled and that, in her presence, husband called the Mexican lawyer and stated that he no longer wished to proceed with the divorce.

Contrary to husband's contention, wife's actual knowledge of the Mexican proceeding does not substitute for service of process under Colorado law. *See In re Marriage of Thacker,* 701 P.2d 871 (Colo.App.1985). Further, although husband claims that he made proper service in Mexico according to Mexican law, he did not present any supporting authority or evidence to substantiate that claim. Additionally, wife never entered an appearance in the Mexican proceeding, and nothing in the record indicates whether Mexican law permitted a meaningful appearance on her behalf after she became aware of the Mexican divorce proceeding. In fact, it is undisputed that certain hearings were conducted in Mexico of which wife was not notified.

Because the record fails to establish how service was to be made under these circumstances, and also does not demonstrate that the notice given to wife provided her with an adequate opportunity to litigate and defend the significant issues of maintenance and distribution of property implicated in the termination of the marriage, we hold that the trial court properly declined to recognize and enforce the Mexican decree under the doctrine of comity. *See In re Marriage of Lockwood,* 857 P.2d 557 (Colo.App.1993) (Colorado courts may amend, modify, and set aside divorce decrees entered in other jurisdictions, and make new orders as may be necessary to do justice and equity pursuant to the public policy of this state).

## II. Enforceability of Prenuptial Agreement

■ We also disagree with husband's contention that the trial court erred in determining that the prenuptial agreement was not enforceable.

■ A marital agreement is enforceable only if it has been executed voluntarily and there has been fair and reasonable disclosure of the property and financial obligations of the party seeking to enforce the agreement. Section 14–2–307(1), C.R.S.2000; *In re Marriage of Goldin,* 923 P.2d 376 (Colo.App. 1996).

Here, wife testified that an attachment to the prenuptial agreement labeled "Balance Sheet of Dean A. Seewald" was blank at the time she signed the agreement. The attorney she consulted at husband's direction, who also testified at the permanent orders hearing, confirmed that husband's financial disclosure was incomplete. The attorney stated that, as a result, he had advised wife that the agreement was not then valid. Although husband testified that he had provided a complete list of assets at the time he and wife discussed the agreement, the trial court resolved that conflict in the evidence in wife's favor.

We may not reweigh that evidence or substitute our judgment for that of the trial court. *See In re Marriage of Rahn,* 914 P.2d 463 (Colo.App.1995). Both wife's testimony and that of the attorney support the trial court's conclusion that the disclosure given was neither fair nor reasonable, and we may not overturn it.

## III. Division of Marital Property

■ We agree, however, with husband's final contention on cross-appeal that the trial court erred in dividing the marital estate without providing specific findings as to the classification of the assets held in his revocable trust. We similarly agree with wife's contention that further proceedings regarding the division of marital property are necessary.

The trust was formed in 1977, and, according to husband, ownership of all of his premarital assets was transferred to the trust well in advance of the marriage. He maintains that his premarital property remained segregated in the trust and that, although certain assets were liquidated and reinvested in mutual funds held by the trust, no commingling occurred, and the property retained its separate character. Husband also points

to an $800,000 loss in the trust's value during the marriage, reducing its overall value from $2 million at the time of the marriage to $1.2 million at the time of permanent orders.

■ Section 14–10–113, C.R.S.2000, sets forth the required method for evaluating the marital estate. *In re Marriage of Burford*, 950 P.2d 682 (Colo.App.1997). Initially, the court must determine whether an asset is marital property, i.e., acquired during the marriage and subject to distribution, or separate property, which is shielded from distribution. *In re Marriage of Hunt*, 909 P.2d 525 (Colo.1995).

■ Generally, property acquired by either spouse during the marriage is presumed to be marital property. Section 14–10–113(3), C.R.S.2000; *In re Marriage of Bartolo*, 971 P.2d 699 (Colo.App.1998). Marital property also includes any appreciation in the value of separate property or any income produced by separate assets during the marriage. Section 14–10–113(4), C.R.S. 2000; *In re Marriage of Foottit*, 903 P.2d 1209 (Colo.App.1995).

■ However, the marital property presumption may be overcome by evidence establishing that the property in question was acquired by a method listed in § 14–10–113(2), C.R.S.2000. As pertinent here, § 14–10–113(2)(b), C.R.S.2000, excludes from the marital estate that property acquired in exchange for premarital property. A spouse claiming ownership under that exchange provision must prove a series of exchanges back to an original separate asset. This method of proving exchanges is called tracing. B. Turner, *Equitable Distribution of Property* 259–60 (2d ed.1994).

■ The overall value of a spouse's separate property should not be considered until after the court has identified the increase in value, if any, of each separate asset and added that amount to the marital estate. Once the value of the marital estate has been determined, the court may then consider any increase or decrease in the value of a spouse's entire separate property in making an equitable and just division of the marital estate. *In re Marriage of Burford, supra.*

Here, the trial court found that husband was the owner of the trust assets and that, to the extent an item of property held by the trust was acquired during the marriage and not in a manner set forth in § 14–10–113(2), such an item would be treated and divided as marital property. In awarding husband the assets in the trust, the court noted the total loss the trust had suffered during the marriage, but did not address whether any of the trust assets had increased in value during the marriage. In that regard, the court did not specify whether the parties had consumed the trust corpus to support their lifestyle. The court also did not make any findings concerning the classification of the specific assets comprising the trust, including whether husband was able to trace the present trust assets back to his premarital holdings sufficiently to overcome the presumption of marital property. *See In re Marriage of Renier*, 854 P.2d 1382 (Colo.App.1993).

Consequently, we are unable to determine from the permanent orders whether the court concluded that there had been commingling of husband's premarital assets or whether any marital appreciation in any of the trust assets had occurred and should have been included in the marital estate. These deficiencies further preclude us from evaluating the trial court's property division to determine whether it was inequitable, as claimed by wife in her appeal. *See In re Marriage of Jaeger*, 883 P.2d 577 (Colo.App. 1994) (the division of marital property must be equitable and just). Thus, we must set aside the property division and remand this matter for further proceedings, including specific findings concerning the classification of the trust assets and a determination whether any such assets increased in value during the marriage. The trial court must then redetermine the extent of the marital estate and divide it equitably based upon those findings. *See In re Marriage of Wells*, 850 P.2d 694 (Colo.1993) (in dividing marital property on remand, trial court must consider economic circumstances of spouses at time of such hearing).

### IV. Maintenance

■ In her appeal, wife contends that the trial court erred in denying her request for

maintenance. However, because we have set aside the property division, the question of maintenance must also be reconsidered on remand. *See In re Marriage of Antuna*, 8 P.3d 589 (Colo.App.2000).

We note, however, that before maintenance may be awarded, the court must make a threshold determination that the spouse requesting it lacks sufficient property, including marital property, to provide for her reasonable needs and is unable to support herself through appropriate employment. Section 14–10–114(1), C.R.S.2000; *In re Marriage of Renier, supra.*

Once the threshold has been met, the amount and duration of maintenance may be determined based upon a consideration of the relevant factors set forth in § 14–10–114(2), C.R.S.2000. *See In re Marriage of Fisher*, 931 P.2d 558 (Colo.App.1996).

Many of the factors discussed generally by the court in making its property division were pertinent to the question of maintenance. However, the trial court entered no findings regarding wife's reasonable expenses or her ability to provide for her own support. Thus, there are no findings demonstrating the basis for the court's maintenance determination, including whether wife satisfied the threshold. *See In re Marriage of Laychak*, 704 P.2d 874 (Colo.App.1985). Thus, on remand, we direct the court to make the requisite findings concerning the threshold determination, as well as those factors pertinent to the amount and duration of maintenance if an award of maintenance is deemed appropriate. *See In re Marriage of Wormell*, 697 P.2d 812 (Colo.App.1985).

Wife's request for attorney fees must also be reconsidered on remand. *See In re Marriage of Renier, supra.*

The judgment is reversed as to the property division and the denial of wife's requests for maintenance and attorney fees. The judgment is affirmed in all other respects, and the cause is remanded for further proceedings including a new hearing, consistent with this opinion.

ROTHENBERG and ROY, JJ., concur.