2013 COA 6

**In re the MARRIAGE OF Emily A. KREJCI, Appellee and Cross–Appellant,**

**and**

**John R. Krejci, Appellant and Cross–Appellee.**

**No. 11CA2345.**

Colorado Court of Appeals, Div. I.

Jan. 17, 2013.

Holland & Hart, LLP, Teresa D. Locke, Denver, Colorado, for Appellee and Cross–Appellant.

Kraemer, Golden & O'Brien, LLC, Michael M. O'Brien, Fort Collins, Colorado, for Appellant and Cross–Appellee.

Opinion by Judge WEBB.

¶ 1 John R. Krejci (husband) appeals from the property distribution provisions of permanent orders entered in connection with dissolution of his marriage to Emily A. Krejci (wife), and from findings concerning wife's income for purposes of calculating child support. Wife conditionally cross-appeals from the property distribution. We affirm in part, reverse in part, and remand for further proceedings.

## I. Property Distribution

### A. The Marital Home

¶ 2 Husband primarily contends the trial court erred by classifying the marital home as wife's separate property to the extent that her mother contributed to the equity by paying off the mortgage during the marriage. Resolving a question of first impression in Colorado, we conclude that a gift by a third-party donor during the marriage, which increases the value of a jointly-titled asset of the spouses, is presumably a gift to the marriage, and that this presumption can only be rebutted by clear and convincing evidence. Therefore, because the trial court did not apply this presumption, further findings are required.

¶ 3 The classification of property as marital or separate is a legal determination based on resolution of factual disputes. *In re Marriage of Williamson,* 205 P.3d 538, 540 (Colo.App.2009). Although we defer to the trial court's factual findings concerning its classification of equity in the marital home, we independently review the legal standard the court applied. *See id.*

¶ 4 When a spouse places separate property in joint ownership during the marriage, a presumption that the donor spouse intended a gift to the marriage arises; the gifted property is presumed marital absent clear and convincing evidence to the contrary. *In re Marriage of Balanson,* 25 P.3d 28, 37 (Colo.2001).[1]

¶ 5 Here, the parties purchased the marital home jointly during their marriage. Several years later, wife's mother paid off the mortgage, on which both parties were obligors, by a direct transfer to the creditor. Wife testified that her mother had intended to make a gift to wife alone. Husband testified that wife and her mother told him the payment was intended to benefit them both. Shortly after the payoff, the mother signed a trust instrument that did not mention husband and described all prior gifts to wife as advances on her inheritance.

¶ 6 The trial court found that because the funds used to pay off the mortgage were part of wife's inheritance, they were her separate property under section 14–10–113(2)(a), C.R.S.2012 (exempting property that a spouse acquires by gift, bequest, devise, or descent from the marital estate). The court did not apply the presumption recognized in *Balanson,* for which husband had argued.

¶ 7 No Colorado case has addressed whether the marital property presumption applies to a gift by a third party that increas-

---

**1.** The Uniform Dissolution of Marriage Act, sections 14–10–101 to –133, C.R.S.2012, does not address this presumption.

es the value of a jointly-owned asset. *In re Marriage of Dale,* 87 P.3d 219 (Colo.App. 2003), on which husband relies, involved personal property that the wife's mother purchased for the marital home.

¶ 8 In *Strang v. Strang,* 222 A.D.2d 975, 635 N.Y.S.2d 786, 788–89 (1995), the court treated funds gifted by the wife's father to satisfy the parties' joint debt on the marital residence as marital. *See also Knecht v. Knecht,* 629 So.2d 883, 886 (Fla.Dist.Ct.App. 1993) (applying the presumption when the husband's mother paid a portion of the down payment on the parties' jointly-owned home); 1 Brett R. Turner, *Equitable Distribution of Property* § 5:43, at 480 (3d ed. 2005) ("The presumption also applies to contributions made with separate funds to property already titled jointly...."). Other jurisdictions have applied a marital property presumption to real property conveyed by a third party to a married couple jointly. *See, e.g., In re Marriage of Hunter,* 223 Ill.App.3d 947, 166 Ill.Dec. 242, 585 N.E.2d 1264, 1268–69 (1992); *Lee v. Lee,* 595 A.2d 408, 410–11 (Me.1991); *Tubbs v. Tubbs,* 755 S.W.2d 423, 424 (Mo.Ct.App.1988); *In re Marriage of Martin,* 32 Wash.App. 92, 645 P.2d 1148, 1150 (1982).

¶ 9 *In re Marriage of Stumpf,* 932 P.2d 845, 848 (Colo.App.1996), recognized the concept of marriage as a partnership or joint enterprise. Applying the marital property presumption to all property transferred into joint ownership, whether by one of the spouses, as in *Stumpf,* or by a third party, furthers this concept. *See Lee,* 595 A.2d at 411; *see also Spooner v. Spooner,* 850 A.2d 354, 362 (Me.2004). Moreover, we discern no rationale for limiting this presumption to spousal transfers.

¶ 10 Having concluded that the court erred by failing to apply this presumption, its allocation of the marital home cannot be upheld as equitable under the totality of the circumstances, which wife suggests. *See Balanson,* 25 P.3d at 42; *In re Marriage of Burford,* 950 P.2d 682, 686 (Colo.App.1997).[2]

¶ 11 Accordingly, on remand, the court should apply the presumption, decide whether it has been overcome by clear and convinc-

ing evidence, and then if it has not been overcome, reconsider the marital component of the equity in the home. The court may, but need not, hear further evidence of the mother's intent.

### B. Wife's Merrill Lynch Investment Account

■ ¶ 12 Husband next contends the trial court erred by classifying all of this account, including the marital increase in value, as wife's separate property. We agree.

■ ¶ 13 Any appreciation of a spouse's separate property during the marriage is marital property subject to equitable division under section 14–10–113(1), C.R.S.2012. *See Balanson,* 25 P.3d at 42; *Dale,* 87 P.3d at 225.

¶ 14 Here, during the marriage, wife deposited her inheritance from the estates of her mother and her brother into the parties' joint investment account, which became the Merrill Lynch account. Husband later agreed to remove his name from this account. When husband's name was removed, the value of the account was $323,978. Its value as of the hearing was $517,545.

¶ 15 In her proposed property division chart, wife identified a $53,653 marital increase in the account based on the difference between her total inheritance ($463,892), and the value of the account as of the hearing. Nevertheless, the trial court classified the entire account as wife's separate property, explaining that the funds derived from her inheritance. This classification is not supported by the record.

¶ 16 The court acknowledged some logic in assuming that the account had increased in value, but found that husband failed to establish any appreciation of the account during the parties' marriage. This finding is not supported by the account valuation evidence presented at the hearing. Therefore, on remand the trial court should determine the marital increase in value of the account, and then distribute the increase equitably under section 14–10–113(1).

---

**2.** Given this disposition, we need not address husband's contention that the court miscalculat-

ed the equalization payment due to him from wife for the marital portion of the home.

¶ 17 When determining the amount of marital increase, the court must resolve whether wife always intended her inheritance to remain separate property. If so, the marital increase in value should be calculated by subtracting the amount of wife's inheritance ($463,892) from the value of the account at the time of the hearing ($517,545). However, if the inherited funds became marital when wife deposited them into the parties' joint account, and were then gifted back to wife when husband removed his name from the account, the increase in value should be calculated by subtracting the value of the account at the time husband's name was removed ($323,978) from the value at the time of the hearing ($517,545). The court may in its discretion take additional evidence when determining the intent issue.

¶ 18 Because the marital increase in value of the account was erroneously omitted from the marital estate, reconsideration of the entire marital property distribution is required. *See In re Marriage of McCadam*, 910 P.2d 98, 100 (Colo.App.1995).[3]

■ ¶ 19 Wife's argument that reversal and remand are not necessary because her entire inheritance, which included funds other than those in the Merrill Lynch account, decreased in value during the marriage, is unpersuasive. The net overall increase or decrease in value of a spouse's separate property is not considered when the court determines the value of the marital estate. *See Burford*, 950 P.2d at 685; *see also In re Marriage of Seewald*, 22 P.3d 580, 586 (Colo. App.2001). Rather, the trial court adds to the marital estate only the amount of marital increase in any separate asset, without regard to other separate assets that have decreased in value during the marriage. *See Burford*, 950 P.2d at 685.

¶ 20 Contrary to wife's assertion, *In re Marriage of Powell*, 220 P.3d 952 (Colo.App. 2009), does not support a different conclusion. There, the husband argued that the marital portion of the wife's premarital Individual Retirement Account should have been calculated based on the increased value of individual securities in the account. *Id.* at 957. Instead, the trial court valued the account as a single asset, which reflected ap-

preciation in some securities and depreciation in other securities. *Id.* at 958. In affirming, the division relied in part on section 14–10–113(4), C.R.S.2012, which provides that "an asset of a spouse acquired prior to the marriage ... shall be considered as marital property" to the extent of any increase in value, and on *Burford*, 950 P.2d at 685, which described "an asset" as "only a single item."

¶ 21 Here, in contrast, wife argues that as long as her entire inheritance remained liquid, it constituted a single asset, even if placed in multiple accounts. She provides no definition of "asset" supporting this conclusion, nor have we found one in Colorado. The general meaning of this term would support treating each account separately, even if funded from a common source. *See Black's Law Dictionary* 112 (7th ed. 1999) ("An item that is owned and has value."); *see also Seewald*, 22 P.3d at 585–86 (rejecting argument that all assets held in spouse's separate revocable trust should be considered together as one unit for purposes of determining any marital increase or decrease in value). Further, adopting wife's approach could create tracing difficulties as funds were distributed across multiple accounts. *See Seewald*, 22 P.3d at 586.

### C. Husband's Interest in Race Place

■ ¶ 22 On cross-appeal, wife contends the trial court erred in determining the marital increase in value of husband's interest in Race Place, a real estate investment company. We disagree.

■ ¶ 23 Valuing property is within the trial court's discretion, and the court's determination will not be disturbed on appeal if it is reasonable in light of the evidence as a whole. *In re Marriage of Nevarez*, 170 P.3d 808, 812 (Colo.App.2007). The court may select the valuation of one party over that of the other party, or make its own valuation, and its decision will be upheld on appeal unless clearly erroneous. *Id.* The parties must present the court with sufficient data to make a reasonable valuation; any failure to do so does not provide grounds for reversal. *See In re Marriage of Rodrick*, 176 P.3d 806,

3. On appeal, neither party requested recalculation of maintenance and attorney fees.

815 (Colo.App.2007); *see also In re Marriage of Nordahl*, 834 P.2d 838, 842 (Colo.App. 1992) (business valuation upheld when neither party provided expert evidence, so the court based value on the only evidence before it).

¶ 24 Here, neither party presented expert testimony concerning the value of husband's interest in Race Place. Husband's father, who gave husband this interest, testified that the company decreased in value after husband received his interest. He further testified that although husband's capital account had increased, the amount of funds in that account had no relation to the value of husband's interest in the company. The trial court found a marital increase in value only to the extent of the income husband had earned from his interest.

¶ 25 Wife provides no authority indicating that the trial court erred by valuing husband's interest in this manner. The court's decision not to rely on the capital account, as wife urged it to do, has record support from the testimony of husband's father. Accordingly, the court did not abuse its discretion. *See Nordahl*, 834 P.2d at 842.

### D. The Parties' Retirement and Health Savings Accounts

¶ 26 Because the trial court must reconsider the entire property division on remand, we need not address wife's contention that the trial court abused its discretion by dividing the parties' retirement assets and health savings account inequitably. *See Burford*, 950 P.2d at 686.

### II. Wife's Income for Purposes of Calculating Child Support

### A. Employment Earnings

¶ 27 Husband contends the trial court abused its discretion by failing to make findings whether wife was voluntarily underemployed. We agree that specific findings are necessary.

¶ 28 Under section 14–10–115(5)(b)(I), C.R.S.2012, if a parent is voluntarily underemployed, child support must be calculated based on the parent's potential income. This provision imputes income to a parent who shirks his or her child support obligation by unreasonably foregoing higher paying employment. *People v. Martinez*, 70 P.3d 474, 480 (Colo.2003). Deciding whether a parent is voluntarily underemployed requires the trial court to make factual findings and then apply a legal standard. *See id.* at 476–77.

¶ 29 Here, wife testified that she had obtained a teaching position at fifty-eight percent of full time, and that she had attempted to find a full-time position without success. Husband argued that because wife was voluntarily underemployed, full-time income should be imputed to her. The trial court calculated child support using wife's part-time employment income plus royalties she received, but made no findings whether wife was voluntarily underemployed by working only part time. Contrary to wife's argument, the trial court did not make any finding concerning the reasonableness of her efforts to find a full-time position.

¶ 30 Accordingly, remand is necessary for the court to reconsider this issue and enter findings supporting its determination. *See In re Marriage of Campbell*, 140 P.3d 320, 324–25 (Colo.App.2006).

### B. Dividend Income

¶ 31 Husband next contends the trial court abused its discretion by failing to include in wife's income the dividends she earns on her investments. We agree.

¶ 32 Under section 14–10–115(5)(a)(I)(F), C.R.S.2012, a parent's gross income for child support purposes includes dividends.

¶ 33 Here, wife's investment account statements showed that she received dividends from securities in the account, and was projected to receive $6663 in dividends for 2012. Wife initially testified that she was unaware of the dividends. Then she testified that the dividends were reinvested in her account and should be included in her income for child support purposes. The court did not include the dividends, but failed to explain the omission. Contrary to wife's argument, the record does not reflect, and the court did not find, that the dividends were speculative.

¶ 34 Accordingly, on remand, the court should recalculate wife's income for child

support purposes to include her dividends, in an amount to be determined by the court.[4]

## III. Conclusion

¶ 35 The portions of the judgment setting apart wife's separate property, dividing the marital property, and calculating wife's income for purposes of child support are reversed. The case is remanded for the trial court to reconsider and make additional findings concerning these issues. The court may also reconsider the related issues of maintenance and attorney fees, to the extent it deems necessary based on its new findings concerning the property division and wife's income.

¶ 36 In all other respects, the judgment is affirmed.

Judge LOEB concurs.

Judge TAUBMAN specially concurs.

Judge TAUBMAN specially concurs.

¶ 37 I agree with the majority's analysis and conclusion, but I write separately to suggest that the marital presumption should be that a third-party donor intended a gift to the marriage, and that such a gift is presumed marital absent a preponderance of evidence to the contrary.

¶ 38 As the majority notes, in *In re Marriage of Balanson*, 25 P.3d 28, 37 (Colo.2001), the supreme court held that when a spouse places separate property in joint ownership during the marriage, a presumption that the donor spouse intended a gift to the marriage arises, and such gifted property is presumed marital absent clear and convincing evidence to the contrary. In reaching this conclusion, the *Balanson* court relied on *In re Marriage of Bartolo*, 971 P.2d 699, 700 (Colo.App.1998), in which a division of this court held that the trial court properly concluded that the marital presumption established in section 14–10–113(3), C.R.S.2012, had been overcome by clear and convincing evidence. That statutory presumption states that "all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property, regardless of whether title is held individual-ly or by the spouses in some form of co[-]ownership such as joint tenancy." § 14–10–113(3). However, neither the *Balanson* nor the *Bartolo* court explained the derivation of the clear and convincing standard applied to overcome the marital presumption.

¶ 39 The *Balanson* court also discussed *In re Marriage of Stumpf*, 932 P.2d 845, 848 (Colo.App.1996), and *In re Marriage of Moncrief*, 36 Colo.App. 140, 141, 535 P.2d 1137, 1138 (1975), regarding the marital presumption. However, neither the *Stumpf* nor the *Moncrief* division discussed the clear and convincing standard to overcome the marital presumption.

¶ 40 The *Moncrief* division cited *In re Marriage of Altman*, 35 Colo.App. 183, 185, 530 P.2d 1012, 1013 (1974), for the proposition that under the Uniform Dissolution of Marriage Act, when one spouse causes title to be placed jointly with the other spouse, a gift is presumed and the burden to show otherwise is upon the donor. In *Altman*, the division relied on *Botkin v. Pyle*, 91 Colo. 221, 232, 14 P.2d 187, 191 (1932), *abrogated by Page v. Clark*, 197 Colo. 306, 317–20, 592 P.2d 792, 799–801 (1979), a case involving, among other things, the criteria for establishing a resulting trust, which is a trust that the court presumes to arise out of the transactions of parties, "as if one man pays the purchase[ ]money for an estate, and the deed is taken in the name of another." *Id.* (quoting 1 *Perry on Trusts and Trustees* 17 (7th ed.)).

¶ 41 The *Botkin* court held that "[w]here . . . the husband acquires and pays for real property, and causes his wife's name to be inserted in the deed as one of the grantees therein, there is a presumption that he intended it as a gift or advancement, and the burden of showing otherwise is upon him who asserts it." *Id.* at 234, 14 P.2d at 191. The supreme court noted that to establish a resulting trust, the evidence "must be clear, strong, unequivocal, [and] unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt." *Id.* at 233, 14 P.2d at 191 (quoting 3 *Pomeroy's Equity Jurisprudence* 2357 (4th ed. 1918));

---

4. We reject wife's argument, unsupported by any authority, that dividends can be included as in-come only if they are guaranteed. Rarely is future income a certainty.

see *Cortez Land & Sec. Co. v. Stabler*, 84 Colo. 64, 65, 268 P. 526, 526 (1928) ("Where one purchases and pays for real property, causing title to be conveyed to another without consideration, a trust results in favor of him who paid for the property. Where, however, the grantee is his wife, there is a presumption that he intended it as a gift or an advancement; and in that case, one seeking to establish a resulting trust must show, by strong and convincing evidence, that he did not intend it as a gift or an advancement.").

¶ 42 Although *Botkin* and *Cortez Land & Securities* did not expressly apply a clear and convincing burden of proof, they applied the equivalent. In *Borer v. Lewis*, 91 P.3d 375, 379 (Colo.2004), the supreme court held that, when considering a motion to set aside a default judgment, the standard of clear, strong, and satisfactory proof was equivalent to a clear and convincing burden of proof standard. Similarly in *Page*, 197 Colo. at 317 n. 3, 592 P.2d at 799 n. 3, the supreme court noted that the burden of proof in actions in equity had been cited as "clear, strong, satisfactory, and convincing" (citing and abrogating *Tourtelotte v. Brown*, 4 Colo.App. 377, 36 P. 73 (1894)), and similar formulations, all of which were tantamount to a clear and convincing standard.

¶ 43 Thus, the marital presumption as it had been applied in *Balanson* and earlier cases implicitly relied on the above-cited resulting and constructive trust cases which set forth a standard of proof equivalent to clear and convincing evidence necessary to overcome the marital presumption.

¶ 44 After *Balanson* was decided, in 2002 the legislature amended section 14–10–113 by adding subsection (7) which provided that gifts from one spouse to another, except gifts of nonbusiness tangible personal property, whether in trust or not, shall be presumed to be marital property and not separate property. The statute provided expressly for the first time that this presumption "may be rebutted by clear and convincing evidence." § 14–10–113(7)(a), C.R.S.2012.

¶ 45 Because this statutory amendment applies only to certain gifts from one spouse to another, it does not apply to the circumstances presented here. Indeed, section 14–10–113(7)(b), C.R.S.2012, further provides that for purposes of section 14–10–113(1) to (4) only,

> "property" and "an asset of a spouse" shall not include any interest a party may have as an heir at law of a living person or any interest under any donative third[-]party instrument which is amendable or revocable, including but not limited to third-party wills, revocable trusts, life insurance, and retirement benefit instruments, nor shall any such interests be considered as an economic circumstance or other factor.

Accordingly, the General Assembly did not intend that a third party's gifts to a spouse should be presumed to be marital property, subject to refutation by a clear and convincing standard of proof. In the absence of such language, I would suggest that section 13–25–127(1), C.R.S.2012, applies here, and thus, the marital presumption to be applied in this case should be subject to refutation by a preponderance of the evidence, rather than by clear and convincing evidence. *See Page*, 197 Colo. at 317–19, 592 P.2d at 799–801 (applying section 13–25–127(1) preponderance of the evidence standard to imposition of constructive trust, abrogating *Botkin* and other cases applying clear and convincing burden of proof).