24CA1812 Marriage of Prieto 10-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1812
Weld County District Court No. 22DR998
Honorable Julie C. Hoskins, Judge

In re the Marriage of

Manuel Ruiz Prieto,

Appellant and Cross-Appellee,

and

Lisa Ruiz Prieto,

Appellee and Cross-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

Antommaria Ilevska Elder, LLC, Sharon Elder, Greeley, Colorado, for Appellant and Cross-Appellee

Lyons Gaddis, P.C., John Wade Gaddis, Longmont, Colorado, for Appellee and Cross-Appellant

¶ 1     Manuel Ruiz Prieto (husband) appeals the division of marital property entered in connection with the dissolution of his marriage with Lisa Ruiz Prieto (wife).  Wife cross-appeals the lack of security for payments the court ordered husband to make to her.  We affirm.

## I.     Background

¶ 2     The parties were married for eight years.  During the marriage, husband owned and operated a trucking business, Ruiz Trucking, LLC.  In 2018 and 2019, the reported incomes for Ruiz Trucking were $366,279 and $696,647, respectively.  In 2020, husband closed the business, sold several of its trucks, and moved to Mexico.  In 2022, he returned to Colorado and reopened the business.  Although the parties disputed the amount of Ruiz Trucking's income in 2023, there was evidence to indicate that the business was generating at least $25,000 of monthly income.

¶ 3     At the permanent orders hearing, husband testified that the value of Ruiz Trucking was limited to the value of the two trucks it still owned.  He did not specify that value, but in his written closing argument, he claimed the trucks had no marketable value.

¶ 4     Wife presented testimony from an expert that Ruiz Trucking made material misstatements in its financial reports, understated

its net income, and misreported its assets. The expert testified that Ruiz Trucking's net monthly income for 2023 was at least $37,300. Although the court precluded the expert from opining on the value of Ruiz Trucking, wife argued it was worth $454,308 — one times its average annual income for 2018, 2019, and 2023.[1]

¶ 5 The district court adopted wife's valuation. It first found that husband's claim that Ruiz Trucking had minimal or no value was inconsistent with the substantial income the business had generated over past years. It also found that husband had "not been forthcoming with the value of income or assets of his business," and "his bookkeeping as to expenses ha[d] been inaccurate." Noting that it had "no other starting point" for valuing the business, the court concluded that wife's valuation was "quite reasonable[] and likely understate[d] the value of Ruiz Trucking."

¶ 6 The court divided the value of the business equally between the parties, allocating ownership of the business to husband and ordering him to pay wife $227,154 (via monthly payments on an

---

[1] Although wife's expert testified that Ruiz Trucking's 2023 monthly income was $37,300, wife's valuation used a more conservative calculation of $25,000 that was based on husband's estimates.

interest-bearing promissory note).  The court also equally divided the marital equity in the marital home, with husband retaining the home and paying wife her share of the equity ($168,762) through monthly payments on an interest-bearing promissory note.  The court divided the other marital assets relatively equally as well.

¶ 7 The court reserved jurisdiction to divide a piece of property in Fort Lupton that wife alleged, in a separate pending civil action, had been fraudulently transferred from Ruiz Trucking to husband's sister-in-law.  The civil case resulted in an order invalidating the transfer and concluding that Ruiz Trucking owned a fifty percent interest in the property.  The dissolution court then allocated to wife half of the marital equity in that property, entered judgment in her favor, and authorized her to file a first lien against the property.

## II.    Value of Ruiz Trucking

¶ 8 Husband contends that the district court erred in determining the value of Ruiz Trucking.  He argues that the court used an improper valuation method, relied on outdated and speculative financial information, and failed to consider the value of the business's assets and liabilities.  We are not persuaded.

## A. Applicable Law and Standard of Review

¶ 9 The district court has discretion to determine the value of marital property, so long as its valuation is reasonable in light of the evidence as a whole. *In re Marriage of Krejci*, 2013 COA 6, ¶ 23. The court may select the valuation of one party over that of the other, or it may make its own valuation. *Id.* We will uphold the district court's decision unless it is clearly erroneous. *Id.*

¶ 10 It is the parties' duty to present the district court with sufficient data to make a reasonable valuation, and a party's failure to do so is not a basis for reversal. *Id.* Thus, a party who fails to present sufficient evidence of value may not on appeal challenge the adequacy of the evidence to support the court's valuation. *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003).

## B. Analysis

¶ 11 The valuation of Ruiz Trucking proposed by wife, and adopted by the district court, was grounded in the evidence. Wife first calculated the business's average annual net income using (1) its annual income for 2018 and 2019 — the two most recent years before husband temporarily closed the business — as reflected on the company's tax returns; and (2) its projected annual income for

4

2023 — the first year after the business reopened — based on husband's own testimony about the company's gross revenue and historical net income percentage. She then used a multiplier of one times annual net income to arrive at an estimated value.

¶ 12    The district court's decision to adopt wife's proposed valuation was reasonable in light of the evidence presented. *See Krejci,* ¶ 23. Neither party presented expert testimony of the business's value. And husband maintained only that the business was practically worthless — a position the district court rejected as incredible in light of the business's substantial income in past years and husband's inadequate financial disclosures. *See In re Marriage of Thorburn,* 2022 COA 80, ¶ 49 (noting that credibility determinations are "within the sole discretion of the [district] court" (citation omitted)). The district court appropriately weighed the parties' conflicting valuations and found wife's reasonable based on the financial evidence presented.[2] *See Krejci,* ¶ 23; *In re Marriage of Nordahl,* 834 P.2d 838, 842 (Colo. App. 1992) (upholding the district court's valuation of a business when neither party

_____

[2] Indeed, the district court found that wife's formula "likely understate[d] the value of Ruiz Trucking."

presented expert evidence of its value, the parties' valuations were "sharply conflicting," and the court had evidence of capital investments, value of assets, and annual gross and net earnings).

¶ 13 Husband takes issue with the district court's methodology, arguing that it is overly simplified and fails to take into account several other pertinent factors, including the value of the business's goodwill (if any), a marketability discount, and a capitalization rate. But husband did not present any evidence — or even argument — to allow the court to make these determinations. *See Krejci*, ¶ 23; *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("[I]ssues not raised in or decided by a lower court will not be addressed for the first time on appeal."). And he does not point us to any legal authority that *requires* the court to sua sponte value a business's goodwill or determine and apply a marketability discount and capitalization rate that is not argued by either party and that there is no evidence to support. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (noting that party asserting error bears burden of providing supporting authority for their contentions).

¶ 14 Husband also argues that the district court erred by relying on Ruiz Trucking's income from 2018 and 2019, before he moved to

Mexico and sold many of the business's assets. But based on the record in this case, we cannot say that the court's reliance on the 2018 and 2019 income was unreasonable. Those were the last two full years of operation before husband temporarily closed the business from 2020 to 2022. When husband reopened the business, it quickly returned to generating substantial income. From this evidence, the court could reasonably determine that the business's annual incomes in 2018, 2019, and 2023 — the most recent years of operation — were the most credible indicators of what its performance would be going forward. To the extent husband asserts that the income projection for 2023 was speculative, that calculation too is supported by the record, including wife's expert's testimony and husband's own testimony.

¶ 15    Thus, the record supports the district court's calculation of Ruiz Trucking's average annual income. And based on the evidence and arguments before the court, the court's decision to calculate the value of the business by multiplying its average annual net income by one was a reasonable exercise of its discretion. We therefore will not disturb that valuation. *See Krejci*, ¶¶ 23, 25.

## III.    Division of Marital Property

¶ 16     Husband also contends that the district court erred in its division of the marital estate.  We again disagree.

### A.    Standard of Review

¶ 17     The district court has great latitude to equitably divide the marital estate in a manner it deems just based on the facts and circumstances of the case.  *See* § 14-10-113(1), C.R.S. 2025; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.  We will not disturb the court's division of property absent an abuse of discretion, which occurs when the decision is manifestly arbitrary, unreasonable, or unfair or when the court misapplied the law.  *Medieros*, ¶ 28.

### B.    Analysis

¶ 18     Husband first argues that the district court failed to address whether Ruiz Trucking, which husband founded before the marriage, was his separate property.  But while an asset acquired before the marriage is generally considered the party's separate property, § 14-10-113(4), such an asset becomes marital property if it has become so commingled with marital property that it cannot be traced back to its original separate form, *In re Marriage of Smith*, 2024 COA 95, ¶ 59.  Moreover, any increase in value of a separate

asset during the marriage is marital property. § 14-10-113(4). The party seeking to have property declared as separate bears the burden of proving it retains its separate character. *Smith*, ¶ 41.

¶ 19 By dividing the value of Ruiz Trucking as marital property, the district court implicitly found that husband did not meet this burden. *See Medeiros*, ¶ 52 (holding that, by classifying property as marital, the district court implicitly determined that husband did not overcome the statutory presumption). That finding has record support. In particular, husband does not direct us to any evidence of Ruiz Trucking's premarital value, if any. *See* § 14-10-113(4). Nor did he present any evidence to otherwise trace Ruiz Trucking's present value — in whole or in part — to his separate property. Thus, the district court did not clearly err by finding, albeit implicitly, that the full value of Ruiz Trucking was marital property.

¶ 20 Husband next argues that the district court failed to address his testimony that he was only a fifty-percent owner of Ruiz Trucking, having transferred half of his ownership interest to his girlfriend. But wife argued that this transfer was void as a violation of the automatic injunction prohibiting the transfer of marital property during the pendency of a dissolution proceeding. *See*

§ 14-10-107(4)(b)(I)(A), C.R.S. 2025. And by dividing the entire value of Ruiz Trucking between the parties, the court implicitly agreed and determined that husband retained full ownership of the company. *See Medeiros*, ¶ 46 (holding that district court did not err by failing to make express finding of husband's ownership percentage when its finding was implicit). Husband does not develop any legal or factual argument that the court erred by doing so. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address an undeveloped contention).

¶ 21 Finally, husband contends that, in dividing the marital property, the district court failed to make sufficient findings regarding the factors in section 14-10-113(1). Those factors include the parties' contributions to the acquisition of marital property, the value of property set aside to each party, the parties' economic circumstances, and any increase or decrease in the value of separate property. § 14-10-113(1). But a court need not make specific findings as to each statutory factor as long as its findings allow us to determine that the decision is supported by competent evidence. *In re Marriage of Collins*, 2023 COA 116M, ¶ 19.

¶ 22 The district court found, with record support, that husband was earning $25,000 per month, ten times wife's monthly employment income of $2,500, and it set aside $150,000 of the equity in the marital home as husband's separate property. *See* § 14-10-113(1)(b)-(c). The record also indicates that both parties materially contributed to the acquisition of marital property — husband primarily financially, and wife primarily by caring for the parties' child and home. *See* § 14-10-113(1)(a). Based on this evidence, the court acted within its considerable discretion by allocating the marital property, including the value of Ruiz Trucking, relatively equally. *See In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by the trial court in division of [marital] property . . . unless there has been a clear abuse of discretion.").

IV. Wife's Cross-Appeal — Security for Payments Owed

¶ 23 Wife asserts that the district court's failure to require security for the amounts it ordered husband to pay her — $168,762 for the marital home and $227,154 for Ruiz Trucking, payable in consecutive $5,000 monthly installments — left her "vulnerable to nonpayment and undue financial risk." She asks us to "modify" the

11

permanent orders to provide the necessary security through (1) a lien on the marital home; (2) a security interest in Ruiz Trucking's assets; and (3) monthly financial disclosures from husband.

¶ 24    To the extent wife asks *this court* to enter an order requiring security, we lack the authority to do so. Our appellate jurisdiction is limited to reviewing final judgments and orders. *See* § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1); *In re Marriage of Evans*, 2021 COA 141, ¶ 11. It is not our role to issue them. *See In re Org. of N. Chaffee Cnty. Fire Prot. Dist.*, 544 P.2d 637, 638 (Colo. 1975).

¶ 25    To the extent wife contends that the district court erred by failing to order security, we are not persuaded. The district court had the authority to require security from husband to ensure the enforcement of its orders. § 14-10-118(2), C.R.S. 2025. It did that by ordering husband to execute interest-bearing promissory notes payable to wife. Wife did not request any further security for those payments at the time of the permanent orders.

¶ 26    Later, after the separate civil case determined that Ruiz Trucking owned a fifty-percent interest in the Fort Lupton property, wife asked the court to grant her a first security interest in that property interest to secure husband's payments for the marital

home and Ruiz Trucking. The court awarded wife half of the marital equity in the Fort Lupton property. It also entered judgment in wife's favor and authorized her to file a first lien against the Fort Lupton property for her share in that property.

¶ 27  Although the court did not grant wife's request to extend that security interest to the payments for the marital home and Ruiz Trucking, it acted within its discretion to order a level of security that would reasonably secure wife's right to receive her portion of the marital estate. The court ordered husband to execute promissory notes, and it secured wife's interest in the Fort Lupton property through a judgment and lien. If husband does not comply with the terms of the court's judgment — including by making the required payments — wife has remedies to enforce that judgment. *See, e.g.*, C.R.C.P. 107. We cannot say that the court's ruling was manifestly arbitrary, unreasonable, or unfair or that it misapplied the law. *See In re Marriage of Wormell*, 697 P.2d 812, 814 (Colo. App. 1985) ("[T]he mechanism employed by the court for dividing the marital estate is a matter within the trial court's discretion.").

## V. Husband's Request for Appellate Attorney Fees

¶ 28 Husband requests an award of his attorney fees associated with wife's cross-appeal on the ground that the cross-appeal was frivolous and lacked substantial justification. *See* § 13-17-102(4), C.R.S. 2025; C.A.R. 38(b). We deny this request. Although wife did not prevail in her cross-appeal, the appeal was not so lacking in justification as to warrant an award of fees. *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that awards of appellate attorney fees for frivolous appeals should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).

## VI. Disposition

¶ 29 The judgment is affirmed.

JUDGE HARRIS and JUDGE JOHNSON concur.