In the Matter of the ESTATE OF Warren Frederick HEYN, Deceased.

Vicki Ann White, as the Personal Representative of the Estate of Warren Frederick Heyn, Respondent–Appellant,

v.

Chamois Pierson–Andersen, Tiffany Sage Pierson, and Matthew Andersen, Petitioners–Appellees.

No. 01CA0545.

Colorado Court of Appeals, Div. V.

March 28, 2002.

Scobie & Morlang, L.L.C., Erik Morlang, Denver, Colorado, for Respondent–Appellant.

Holland & Hart, Lawrence G. Katz, Denver, Colorado; Donn P. Alspaugh, Boulder, Colorado, for Petitioners–Appellees.

Opinion by Judge DAVIDSON.

In this probate action involving claims against the estate of Warren Frederick Heyn (decedent), respondent, decedent's daughter Vicki Ann White, as personal representative for the estate, appeals from the judgment of the probate court allowing certain claims of petitioners, Tiffany Sage Pierson, Chamois Pierson–Andersen (granddaughters), and Matthew A. Andersen. We affirm in part and reverse in part.

The probate court found as fact the following: Decedent had a second daughter, Lynn Marie Pierson, who died in April 1993, leaving two daughters, Tiffany Sage Pierson and Chamois Pierson–Andersen, the latter of which married Matthew Andersen. Decedent served as the personal representative of Pierson's estate and as trustee of the testamentary trust set up for his granddaughters. One of the trust assets was a condominium in Arizona, in which decedent resided with Pierson prior to her death. Pierson's estate was closed on April 14, 1995, when the condominium was transferred to the trust for the benefit of the granddaughters. On February 11, 1998, ownership of the condominium was transferred from the trust to the granddaughters. During this period, and until shortly before his death in 2000, decedent continued to live in the condominium.

In this action, the granddaughters alleged that decedent breached his fiduciary duty to them by living in the condominium without paying rent and asserted a claim against decedent's estate for the fair market rental value of the condominium. Respondent denied the claim. After a hearing, the probate court determined that the statute of limita-

tions had expired on the claim for the period prior to April 14, 1995, when decedent was acting as executor of Pierson's estate. It also denied the claim for the period after February 11, 1998, when the granddaughters owned the condominium outright, finding that they had allowed their grandfather to live there rent-free. However, the court allowed the claim for the period from April 14, 1995 to February 11, 1998, when decedent was acting as the trustee.

In addition, all three petitioners asserted claims against decedent's estate for the value of three gift checks, in the amount of $10,000 each, which claims respondent also denied. Each petitioner was the named payee on a check drawn by respondent with power of attorney for decedent. Petitioners received the checks at the end of December 1999, and a notation at the bottom of each check read "1999 gift." Before petitioners attempted to cash the checks, however, respondent asked them to hold the checks. Petitioners agreed and did not cash the checks. After decedent died on January 8, 2000, respondent's husband asked petitioners to return the checks because they were no longer valid. One of the granddaughters returned her check, but the other two petitioners did not. Under decedent's will, the granddaughters were each to receive $1000, and the remainder of the estate was left to respondent. The probate court allowed the claims for the gift checks.

The probate court permitted respondent to introduce evidence on an unpled counterclaim seeking a setoff for amounts owed to decedent for performing his duties as trustee and personal representative. The court found that decedent had not intended to charge a fee for these services and entered judgment for petitioners.

## I.

Respondent contends that the probate court's judgment for the granddaughters on the breach of fiduciary duty claim was erroneous because there was insufficient evidence that decedent did not pay rent to the trust and that he lived in the condominium during the period of trust administration. We disagree.

When asserting a breach of fiduciary duty claim like that here, a plaintiff need only demonstrate a fiduciary relationship and a transfer to or use of trust property by the fiduciary to raise a rebuttable presumption and establish a prima facie case. This showing requires the fiduciary to go forward with some evidence that the transaction was fair and reasonable. Then the trier of fact, here the probate court, must determine, based on all the evidence, whether the plaintiff has proven his or her claim of breach of fiduciary duty by a preponderance of the evidence. *See Eads v. Dearing,* 874 P.2d 474 (Colo.App. 1993). *See also Terrydale Liquidating Trust v. Barness,* 642 F.Supp. 917 (S.D.N.Y.1986); Restatement (Third) of Trusts § 170 cmt. l (1990).

Findings of fact will not be set aside unless they are clearly erroneous, having no support in the record, *see* C.R.C.P. 52; *Trinidad Sch. Dist. No. 1 v. Lopez,* 963 P.2d 1095 (Colo.1998), and when reviewing the sufficiency of evidence to support a judgment, we must view the evidence in the light most favorable to the prevailing party. *See People in Interest of D.L.R.,* 638 P.2d 39 (Colo.1981).

The granddaughters concede that their testimony that decedent lived in the condominium should have been excluded under the dead man's statute, § 13–90–102(1), C.R.S. 2001. Thus, we will not consider that testimony. However, contrary to respondent's assertions, the record contains other competent evidence that decedent made personal use of the condominium during the period of trust administration.

The evidence included an instrument of distribution that transferred Pierson's interest in the condominium from decedent as personal representative to decedent as trustee on the first day of trust administration and a warranty deed that transferred the property from decedent as trustee to the granddaughters on the last day of trust administration. Each document listed decedent's address as the condominium. Also, respondent admitted that decedent had lived in the condominium after Pierson's death. While she stated that he was taking care of

estate business, the context did not exclude periods after the estate was closed. She further testified that she did not think decedent ever thought of paying rent and that if the granddaughters "wanted rent from him, I am sure they could have worked something out. But they never discussed that with him or anything like that." Although there was evidence that decedent listed a Texas address on his 1995 tax return and that he did not have a permanent residence, instead residing in many places, petitioners only had to prove that decedent used the condominium, not that it was his sole residence.

Moreover, respondent did not deny that decedent was the trustee or that, while trustee, he lived in the condominium. Nor did respondent argue that decedent had paid rent to the trust. Instead, respondent defended the transaction as fair because decedent did not have use of the entire condominium in that he was properly using most of it to store estate property; he spent some time staying with friends and family out of state such that the condominium was not his primary residence; and he did not take a fee for executing his duties as personal representative for Pierson's estate or as trustee of the trust. The last justification was also the basis for respondent's counterclaim for a setoff.

The evidence regarding these defenses, however, was disputed or contradictory, and there was sufficient evidence to support the probate court's determination that decedent engaged in self-dealing by not paying rent and that he breached his fiduciary duty by failing to rent, sell, or otherwise put the condominium to productive use.

Respondent argues that certain language creating the trust in Pierson's will permitted decedent to rent the condominium to himself without charging rent. While the will was admitted into evidence during the proceeding, this argument was not raised or considered by the probate court, so we will not address it. *See Dove v. Delgado,* 808 P.2d 1270 (Colo.1991).

## II.

The probate court determined that the checks sent to petitioners were completed gifts, relying on *Sinclair v. Fleischman,* 54 Wash.App. 204, 773 P.2d 101 (1989). In *Sinclair,* under the particular facts of the case, the court found an exception to the general rule that receipt of a check does not constitute a completed gift because delivery is not complete until the check is cashed by the bank. Respondent contends that the probate court erred in determining that the checks were completed gifts. We agree.

### A.

Petitioners initially question whether Colorado follows the rule that a check is not a completed gift until it is accepted by the donor's bank. We conclude that it does.

■■■ An inter vivos gift is invalid in the absence of a delivery that causes the donor to part with control of the property.

> The surrender of the dominion or control, in order to effect a valid gift inter vivos, includes the parting of possession and relinquishment of all control, both present and future, of the property to the extent that it is beyond the power of the donor to recall it. The surrender of control and dominion must be such that if the donor resumes control of the property without the consent of the donee, he will become a trespasser and liable to the donee as such.

*Johnson v. Hilliard,* 113 Colo. 548, 554, 160 P.2d 386, 389 (1945).

■■ However, a drawer-donor does not part with control of the funds at the time a check is given, but only when his or her bank accepts the check. A check is an order directing the drawer-donor's bank to pay the amount of funds listed to the person identified on the check. Section 4-3-104(f), C.R.S. 2001. However, a check does not operate as an assignment of the funds available in the drawer-donor's account, and the bank is not liable on the check until it accepts it. Section 4-3-408, C.R.S.2001. Until the check is accepted or paid by the bank, the drawer-donor has the right to stop payment. Sections 4-4-303(a), 4-4-403(a), C.R.S.2001. While a payee generally has a right of action against the drawer of a stopped check, the drawer has a defense if the check was issued

without consideration. Sections 4–3–303(b), 4–3–414(b), C.R.S.2001. *See also* § 4–3–305(a)(2), C.R.S.2001 (other contract defenses available); *City of Arvada v. Concrete Contractors, Inc.*, 628 P.2d 170, 172 (Colo.App. 1981)("An agreement not supported by consideration is invalid and unenforceable.").

■ Thus, before a donor's death, neither the donor nor the bank is liable on a gift check unless the bank accepts it. Because the donor retains full control of the funds, there is no delivery and the gift is not complete.

■ The death of a donor revokes an undelivered gift. *See Bunnell v. Iverson*, 147 Colo. 552, 364 P.2d 385 (1961). After death, a decedent-donor no longer owns individual bank accounts, which immediately become assets of his or her estate. *See* § 15–12–101, et seq., C.R.S.2001; *People v. McCormick*, 784 P.2d 808 (Colo.App.1989). *See also* § 4–4–405 official comments 2–3, C.R.S.2001 (bank's limited statutory authority to cash checks after a customer's death is subject to the objection of anyone with an interest in the estate and does not prevent an estate from seeking recovery of any payment made by the bank).

Accordingly, we conclude that a donor's check is not a completed gift until it is accepted by the donor's bank prior to the donor's death.

### B.

Respondent contends that the exception recognized in *Sinclair v. Fleischman, supra*, even if available in Colorado, is not applicable under the circumstances. We agree.

In *Sinclair*, a grandson had received a gift check from his grandfather, written by his uncle who had a power of attorney. The grandson did not immediately cash the check because his mother asked him to wait until she could contact her lawyer about a dispute with the uncle over management of the grandfather's assets. Shortly thereafter, the grandson lost the check and asked his uncle to reissue it. However, in the interim, the Washington legislature enacted a statute that limited the ability of a holder of a general power of attorney to make gifts. The rest of the family would not execute a release to permit the uncle to issue another check because it could not agree on the scope of the release.

The court in *Sinclair* relied on an earlier decision, *Phinney v. State*, 36 Wash. 236, 78 P. 927 (1904), in which delivery was found to be complete where the post office misdelivered a check, such that it did not arrive at the bank until after the donor's death. It held that the giving of a check will constitute constructive delivery of the funds when "(1) the donor's intent is clear; (2) creditors are not prejudiced; (3) there is no fraud or undue influence; and (4) the check was not cashed before the donor's death because of circumstances beyond the donor's and donee's control." *Sinclair v. Fleischman, supra*, 54 Wash.App. at 208–09, 773 P.2d at 104.

■ Here, the probate court ruled that there was sufficient delivery under the unique circumstances of the case:

The unique circumstances are the fact that the checks were not timely cashed solely because of the actions of the agent who was the only person to benefit financially if the gifts failed. If Vicki White had been an independent agent (i.e., not the sole residuary devisee under the decedent's will), or if she had not personally induced the donees to forego cashing their gift checks when received, the result here might be different.

Assuming, without deciding, that Colorado would adopt the test for constructive delivery outlined in *Sinclair*, we conclude that its requirements were not met here.

Unlike an intervening change in the law or a delivery failure on the part of a third party, which are beyond the control of the donor and donee, here the checks were not cashed prior to decedent's death only because petitioners assented to respondent's request to wait. Neither respondent nor any third party physically prevented petitioners from cashing the checks prior to decedent's death, and there was no outside event that intervened to invalidate the checks. Accordingly, the *Sinclair* exception does not apply.

The judgment is affirmed as to petitioners' claim for rent and reversed as to their claims for the value of the checks.

Judge CASEBOLT and Judge NIETO concur.