24CA0461 Marriage of Carter 02-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0461
Douglas County District Court No. 21DR30418
Honorable Benjamin Todd Figa, Judge

In re the Marriage of

Anthony L. Carter,

Appellant,

and

Jacqueline Jennifer Nolly,

Appellee.

JUDGMENT AND ORDER AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

Pickard Law, P.C., Joe Pickard, Jay Pickard, Kevin Massaro, Chloe Alder, Littleton, Colorado, for Appellant

The W Law, Jon Eric Stuebner, Denver, Colorado, for Appellee

¶ 1    In this dissolution of marriage case between Anthony L. Carter (husband) and Jacqueline Jennifer Nolly (wife), husband appeals the portion of the permanent orders concerning the division of property and the denial of his C.R.C.P. 59 motion. He contends that the district court erred by classifying two pieces of real property as marital and by misvaluing those properties. We affirm.

## I.    Background

¶ 2    The parties married in 2004. After living apart for much of the marriage, with husband in the United Kingdom (U.K.) and wife in the United States, their marriage was dissolved in 2023.

¶ 3    The primary assets at issue were two pieces of real property in the U.K. titled in husband's name, which we refer to as Hale Road and Long Lane. Husband acquired Hale Road in 2007 and is the sole record owner. He acquired his interest in Long Lane in 2020 and is one of four record owners, along with his parents and sister.

¶ 4    Husband did not disclose his interest in either property before trial. To the contrary, he indicated in two sworn financial statements and the Joint Trial Management Certificate (JTMC) that neither party had any real estate assets. He also represented that he did not have any separate property. Wife asserted in the JTMC

that husband had property interests that he had failed to disclose, though she did not identify those interests to prevent husband from "attempt[ing] to fix the disclosure violations . . . at the last minute before trial." She instead asked the court to "preclude [h]usband from presenting any evidence regarding undisclosed property" and "draw adverse inferences with respect to any undisclosed assets."

¶ 5 At trial, husband testified on direct examination that his parents owned the properties and that he stood to inherit them. When asked on cross-examination why he was listed as a registered owner, he said his parents put him on the deeds "for tax purposes" or as an "inheritance," but the properties belonged to his parents. Husband also testified that "the closest value [he] got" for the properties came from a "surveyor friend" who said Long Lane was worth about £350,000 and Hale Road was worth £170-180,000.

¶ 6 Wife did not directly testify as to the value of the properties. But she testified that her proposed division of marital assets worksheet included those properties. That document — which was not formally admitted as an exhibit at trial but was used by the district court to fashion its property division — listed the value of Hale Road as $371,359 (approximately £286,000) and the value of

2

Long Lane as $571,129 (approximately £439,000, based on the exchange rate used by the district court).[1] The worksheet included a calculation of the Long Lane value, which was based on a one-fourth interest of the estimated value for three residential units and four commercial units. Wife also introduced internet valuations that estimated the value of Hale Road as £287,000, with a range of £273,000 to £302,000, and the total value of two units comprising Long Lane as £366,000, with a range of £292,000 to £439,000.

¶ 7    In its oral ruling on the permanent orders, the district court found that Hale Road and Long Lane were marital property. It explained that husband had "lost a lot of credibility with the court" with respect to these properties by failing to disclose them in his sworn financial statement. The court also found that wife had persuasively established that husband owned both properties.

¶ 8    Walking through each of the statutory considerations under section 14-10-113(1), C.R.S. 2024, the court found that wife "did not have any part in contributing to the acquisition of these marital properties." In doing so, it explained that the properties "appeared

---

[1] The district court took judicial notice of the exchange rate at the time of the hearing, which the parties agreed was £1 = $1.30.

to be gifts from [husband's] family to him, although there was not very much evidence in this regard." The court then found that there was no evidence of any separate property for either party. Based on husband's "disproportionate contribution to the acquisition of the marital property" — primarily through his acquisition of Hale Road and Long Lane — the court allocated sixty percent of the marital assets to husband and forty percent to wife.

¶ 9    As to the value of Hale Road and Long Lane, the court credited wife's position as set forth on her property division worksheet. It found that Hale Road was worth $371,359 (£286,000) and Long Lane was worth $571,129 (£439,000). The court awarded Hale Road to wife and Long Lane to husband. It then ordered husband to make an equalization payment to wife to achieve the 60/40 split.

¶ 10   Husband filed a motion for post-trial relief under C.R.C.P. 59, arguing that the court erred by finding Hale Road and Long Lane were marital property and by overvaluing both properties. The district court denied the motion, concluding that (1) husband did not meet his burden of establishing a separate property interest in the properties; (2) wife presented credible evidence that husband acquired the properties during the marriage, and the internet

4

records supported the valuations; and (3) husband did not exercise reasonable diligence to present his additional evidence at trial.

## II. Classification as Marital Property

¶ 11 Husband contends that the district court erred by finding that Hale Road and Long Lane were marital property because the court found the properties were gifts to him from his family. We disagree with husband's premise and, thus, reject his conclusion as well.

### A. Standard of Review and Applicable Law

¶ 12 The classification of property as marital or separate is a legal determination that is based on the district court's factual findings. *In re Marriage of Smith*, 2024 COA 95, ¶ 42. We defer to the district court's factual findings unless they are clearly erroneous, and we independently review its application of the law. *Id.*

¶ 13 All property acquired by either spouse during the marriage is presumed to be marital property, regardless of whether title is held individually or jointly. *In re Marriage of Zander*, 2021 CO 12, ¶ 16; *see also* § 14-10-113(2), (3). That presumption may be overcome by a showing that the property was acquired by one of the methods listed in section 14-10-113(2). *Zander,* ¶ 16; § 14-10-113(3). The

5

party seeking to have property declared as separate bears the burden of establishing that an exception applies. *Smith*, ¶ 41.

¶ 14 One exception to the presumption of marital property is property that a spouse acquires by gift. § 14-10-113(2)(a). To qualify as a gift, "a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift." *In re Marriage of Balanson*, 25 P.3d 28, 37 (Colo. 2001). Whether a transfer is a gift depends on the intent and acts of the donor and the recipient, which are questions of fact for the district court to decide. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 34.

### B. Analysis

¶ 15 We first disagree with husband that the district court's statement that the properties "appeared to be gifts from [husband's] family to him" was a finding that the properties were acquired by gift for purposes of section 14-10-113(2)(a). The court made this observation *after* finding that the properties were marital property, in the context of considering each spouse's contribution to the acquisition of the marital property. *See* § 14-10-113(1)(a); *see also In re Marriage of Rodrick*, 176 P.3d 806, 814 (Colo. App. 2007) (explaining that the court must consider the contributions of each

spouse *after* setting aside to each spouse their separate property). Thus, the focus of the district court's comment was not on how the properties were acquired but on which spouse acquired them.

¶ 16     Moreover, although the court said the properties "appeared to be gifts," it immediately clarified that "there was not very much evidence in this regard." Read in context, we understand the district court's statement to indicate that husband failed to meet his burden of *proving* that the properties were acquired by gift but did show that, however acquired, they were acquired by husband alone. *See In re Marriage of Medeiros*, 2023 COA 42M, ¶ 52 (holding that, by classifying property as marital, the district court implicitly determined that husband did not overcome the statutory presumption). The court then relied on that finding to allocate a larger proportion of the marital assets to husband than to wife.

¶ 17     Nor did the district court clearly err by finding that husband failed to meet his burden of overcoming the presumption of marital property. To begin, husband repeatedly represented throughout the litigation that he did *not* have any separate property. At trial, his sole position was that Hale Road and Long Lane were owned by his parents and thus were not his property at all. Necessarily, then,

husband did not present evidence of his parents' intent to make a gift or his intent to accept one. *See Balanson*, 25 P.3d at 37; *see also Medeiros*, ¶ 54 (affirming finding of marital property "[g]iven the minimal and conflicting evidence supporting husband's separate property argument"). Indeed, his evidence was to the contrary. *See In re Marriage of Schmedeman*, 190 P.3d 788, 792-93 (Colo. App. 2008) (holding that promise to bequeath cabin was not gift absent actual transfer of property); *In re Estate of Heyn*, 47 P.3d 724, 727 (Colo. App. 2002) ("An inter vivos gift is invalid in the absence of a delivery that causes the donor to part with control of the property.").

¶ 18    In any event, the district court found that husband lacked credibility with respect to Hale Road and Long Lane because he did not disclose them on his sworn financial statement. *Cf. In re Marriage of Sgarlatti*, 801 P.2d 18, 19 (Colo. App. 1990) (holding that court could draw inference against party who failed to make adequate financial disclosure). It was for the district court to decide whether to believe "all, part, or none of [husband's] testimony, even if uncontroverted," and we are bound by its credibility finding. *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007). Husband

8

presented no evidence related to his acquisition of Hale Road and Long Lane beyond his own testimony that the court rejected.

¶ 19     Husband relies on *In re Marriage of Martinez*, 77 P.3d 827 (Colo. App. 2003), to support his argument that Hale Road and Long Lane were not marital property. But *Martinez* relates only to the theory husband advanced in the district court — that the properties were still owned by his parents — which the district court rejected as a factual matter. In contrast to *Martinez*, where the district court found that "the sister was the owner of the property notwithstanding that title was in wife's name," *id.* at 828, the district court in this case found expressly that husband was the owner. In other words, the court found that husband *failed* to show that he took title "under circumstance[s] that give rise to a resulting trust." *Id.* at 829. *Martinez* says nothing about the ensuing factual question as to whether husband acquired the properties by gifts.

¶ 20     In sum, the district court found with record support that husband acquired Hale Road and Long Lane during the marriage. That made them marital property unless husband could prove he had acquired them by gift. By putting all his eggs in the "not my property" basket, husband failed to present any evidence that the

properties were gifts, and the little evidence he did present, the court found incredible. The district court therefore did not clearly err by determining Hale Road and Long Lane were marital property.

### III. Valuation of Hale Road and Long Lane

¶ 21 Husband also asserts that the district court erred in determining the value of Hale Road and Long Lane because its valuations did not have adequate record support. We disagree.

### A. Standard of Review and Applicable Law

¶ 22 The district court has discretion to determine the value of marital property, so long as its valuation is reasonable in light of the evidence as a whole. *In re Marriage of Krejci*, 2013 COA 6, ¶ 23. The court may select the valuation of one party over that of the other, or it may make its own valuation. *Id.* We will uphold the district court's decision unless it is clearly erroneous. *Id.*

¶ 23 It is the parties' duty to present the district court with sufficient data to make a reasonable valuation, and their failure to do so is not a basis for reversal. *Id.* Thus, a party who fails to present sufficient evidence of value at trial may not on appeal challenge the adequacy of the evidence to support the valuation. *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003).

10

## B. Analysis

¶ 24 Initially, we note that husband presented minimal evidence as to the value of either Hale Road or Long Lane. The sole evidence he presented was his own hearsay testimony that "a surveyor friend" had told him the properties were worth £170-180,000 and £350,000, respectively. And even if that single unelaborated comment could have sufficed to support a valuation, the district court found husband not credible — both in general and with respect to these two properties in particular. Having failed to satisfy his duty to present sufficient evidence of the value of the properties at trial, husband cannot challenge the district court's valuations on the ground that there was insufficient evidence to support them. *See Krejci*, ¶ 23; *Zappanti*, 80 P.3d at 992.

¶ 25 In any event, we cannot conclude that the district court's valuations were clearly erroneous in light of the record as a whole. Those values came from wife's proposed property division worksheet, which wife identified as an exhibit before trial and to which husband stipulated as to admissibility. Although the exhibit itself was not formally admitted at trial, wife (1) referred to it during her testimony; (2) confirmed that it was the property division she

11

proposed; (3) specifically noted that it included Hale Road and Long Lane; and (4) requested the equalization payment on the worksheet, which was based on her valuations of Hale Road and Long Lane. In doing so, wife's testimony effectively adopted those valuations. Indeed, in husband's C.R.C.P. 59 motion, husband took the position that the worksheet *was* admitted as an exhibit at trial. The district court then used that worksheet — without objection from husband — in formulating its final property division. Thus, it is not as if the district court pulled the property values out of thin air.

¶ 26 Wife also presented internet valuation estimates for each of the properties, which were admitted without objection. The estimate for Hale Road was £287,000 — the same value used in wife's worksheet and adopted by the district court, with any minor discrepancy attributable to differing exchange rates. The estimate for Long Lane consisted of two separate valuations for two separate units. The total of those two estimates was £366,000, but the total *range* of estimates was £292,000 to £439,000. The value the district court adopted was right at the top end of that range.

¶ 27 Husband argues that both wife's testimony and the internet estimates were inadmissible. He asserts that wife was not qualified

to testify as to the value of the properties because she was not an owner and lacked sufficient knowledge of the properties to form an intelligent opinion as to their value. *See In re Marriage of Plummer*, 709 P.2d 1388, 1389 (Colo. App. 1985). And he maintains that, given wife's lack of personal knowledge, the internet estimates should not have been admitted either. But husband did not object to either wife's testimony or the internet estimates at trial. We therefore will not review these evidentiary objections for the first time on appeal. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 600 (Colo. App. 2007) ("If a party makes no contemporaneous objection to the introduction of evidence, we will not review the alleged error on appeal."); *Gestner v. Gestner*, 2024 COA 55, ¶ 18 ("In civil cases, issues not raised in or decided by the district court generally will not be addressed for the first time on appeal.").

¶ 28 Husband also contends that the district court could not rely on wife's proposed property division worksheet because (1) it was not admitted into evidence and (2) it did not explain the basis for its estimated values. As to the first argument, we have already noted that wife adopted the worksheet in her testimony, giving the court an evidentiary basis for considering the worksheet valuations even

13

if the worksheet itself was not admitted.  Moreover, husband stipulated to its admissibility before trial.  While it appears that wife may have simply overlooked formally moving for its admission, the worksheet was indisputably before the court without objection.

¶ 29    As to husband's challenge to the values on the worksheet, we acknowledge that the basis for the Long Lane valuation in particular is pretty thin.  The note on the worksheet simply states that it is "[b]ased on 1/4 ownership of 3 residential units (£165,000 per unit) and 4 commercial units (£321,400 per unit)."  It does not explain where those per-unit values came from, and the evidence at trial did not establish exactly how many units comprised Long Lane.  Nor does the calculation on the worksheet appear to be tied in any way to the Long Lane internet estimate that wife presented.

¶ 30    But given husband's failure to present any credible evidence to the contrary, the district court was entitled to "rel[y] upon the only evidence available to it" — to which, again, husband did not object.  *Zappanti*, 80 P.3d 892-93.  Under these circumstances, and with no other information to make its own valuation, the district court's decision to accept wife's threadbare valuation over husband's threadbare *and* incredible one was neither unreasonable nor clearly

14

erroneous.  *See Krejci,* ¶ 23; *see also In re Marriage of Nevarez,* 170 P.3d 808, 812 (Colo. App. 2007) (holding that district court did not abuse its discretion where, "based upon the record the parties made, [it] had a single choice").  Thus, because the district court's valuations of Hale Road and Long Lane have record support, we will not disturb them.  *See Krejci,* ¶ 25; *Nevarez,* 170 P.3d at 813.

¶ 31    Finally, we reject husband's attempt to pin his lack of evidence on wife's failure to disclose his inadequate disclosure sooner, which he calls a due process violation.[2]  It was husband's obligation to disclose all properties he owned.  *See* C.R.C.P. 16.2(e)(2), (10) ("[I]t is the duty of parties . . . to provide full disclosure of all material assets and liabilities."); *In re Marriage of Martin,* 2021 COA 101, ¶ 25.  Notwithstanding husband's insistence that he did not believe he owned Hale Road and Long Lane, his name was on the deeds, and the district court found he violated his disclosure obligation and "underreported his real estate holdings" by not disclosing them.

---

[2] Husband did not make a due process argument in the district court.  *See Gestner v. Gestner,* 2024 COA 55, ¶ 18 (noting that we do not address issues first raised on appeal).  But we consider the substance of this argument to the extent it bears on whether the district court clearly erred by relying on wife's valuations.

¶ 32     Husband can hardly now complain that *his* due process rights were violated because wife discovered the omission before trial and did not more promptly warn him to correct it.  *See In re Marriage of Schelp,* 228 P.3d 151, 156 (Colo. 2010) (noting that C.R.C.P. 16.2(e) "shift[s] the responsibility for omissions or misstatements" from the receiving party to the disclosing party); *cf. Rodrick,* 176 P.3d at 815 (holding that the district court properly relied on husband's evidence as to value despite wife's argument that she had been unable to obtain appraisals of the property because she did not receive copies of the deeds until shortly before the hearing).

¶ 33     That does not mean we condone wife's gamesmanship of intentionally withholding the details of husband's nondisclosure to gain an advantage at trial.  Beyond the general duty of candor to the court, "[p]arties to domestic relations cases owe each other and the court a duty of full and honest disclosure" of all material facts and "must affirmatively disclose all information that is material to the resolution of the case."  C.R.C.P. 16.2(e)(1).  More specifically, wife's sworn financial statement required wife to disclose all assets owned by *either* party.  Yet despite complaining about husband's

16

nondisclosure, wife also knowingly failed to disclose Hale Road and Long Lane — contrary to her own disclosure obligation.

¶ 34 Nevertheless, the fact that wife may *also* have violated her disclosure obligation does not excuse husband's nondisclosure or his failure to present evidence of value. It is undisputed that husband knew about Hale Road and Long Lane well before wife disclosed them and, thus, had ample opportunity to obtain evidence of their value in the event they were deemed to be his properties. And when wife disclosed the properties on her exhibit list five days before trial, husband did not ask for a continuance or request any other relief. Thus, even if wife should have handled husband's nondisclosure better, her response is not a basis for reversal.

## IV.   C.R.C.P. 59 Motion

¶ 35 Husband next contends that the district court erred by denying his C.R.C.P. 59 motion. As he acknowledges, his challenges to the Rule 59 order mirror his challenges to the permanent orders, and we reject them for the same reasons. Because the court did not err by finding that Hale Road and Long Lane were marital property, and because there was record support for its valuations of those properties, the court did not abuse its

discretion by denying the Rule 59 motion. *See Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co.*, 185 P.3d 781, 787-88 (Colo. 2008) (reviewing ruling on C.R.C.P. 59 motion for abuse of discretion).

¶ 36    Husband takes issue with the district court's finding that he "could have, with reasonable diligence, discovered and produced additional evidence at the hearing." But to the extent husband sought by his Rule 59 motion to present new evidence — including "an inspection and official valuation [of Long Lane] by a qualified and professional surveyor," city records showing the number of units in Long Lane, and recent "qualified and professional valuation[s]" for both properties — that is the standard he was required to meet. *See* C.R.C.P. 59(d)(4); *see also Aspen Skiing Co. v. Peer*, 804 P.2d 166, 172 (Colo. 1991). For the reasons outlined above, we agree with the district court that he failed to do so.

## V.    Attorney Fees

¶ 37    Wife requests an award of her appellate attorney fees under section 13-17-102(4), C.R.S. 2024, on the ground that husband's appeal lacked substantial justification and was brought for the purpose of delay. We deny this request. Although husband did not prevail, we do not agree that his appeal lacked substantial

justification. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81. Nor is there any basis in the record for us to conclude that husband brought the appeal as an improper delay tactic.

¶ 38 Wife also cites section 14-10-119, C.R.S. 2024, as a basis for an award of attorney fees, but she does not make any argument under that statute that is distinct from her argument that husband acted improperly in initiating and pursuing this appeal. We therefore do not address wife's entitlement to fees under section 14-10-119. *See* C.A.R. 39.1 ("Mere citation . . . to a statute, without more, does not satisfy the legal basis requirement."). To the extent wife wishes to seek fees under that statute, she may do so in the district court. *See In re Marriage of Collins*, 2023 COA 116M, ¶ 86 (noting that "the district court is better equipped to determine the factual issues regarding the parties' current financial resources").

## VI. Disposition

¶ 39 The judgment and order are affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.