24CA0424 Estate of Gebhardt 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0424
Douglas County District Court No. 19PR30212
Honorable H. Clay Hurst, Judge

---

In re the Estate of Doris M. Gebhardt, deceased.

Carol S. Gebhardt,

Appellant,

v.

Linda Erickson,

Appellee.

---

ORDERS AFFIRMED IN PART
AND VACATED IN PART

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

Foster Graham Milstein & Calisher, LLP, Chip G. Schoneberger, Denver,
Colorado; Larry D. Harvey, P.C., Larry D. Harvey, Denver, Colorado, for
Appellant

Creer Law, LLC, Gregory R. Creer, Greenwood Village, Colorado, for Appellee

¶ 1     In this probate case, Carol S. Gebhardt (Gebhardt) appeals the district court's orders that (1) removed her as personal representative of her mother's estate; (2) found her in breach of her fiduciary duty; (3) imposed a surcharge of $51,579.41 for payments she made to herself and for her own legal fees; (4) held her in contempt and ordered her to pay the surcharged amount within sixty days; and (5) denied her motion for reconsideration under C.R.C.P. 59.  We vacate the contempt finding and remedial sanction but affirm the orders in all other respects.

## I.     Background

¶ 2     In February 2019, Doris M. Gebhardt passed away at the age of ninety.  She was survived by three children: Gebhardt, Linda Erickson (Erickson), and David Gebhardt (David) (collectively, the heirs).  Her will designated Gebhardt as personal representative and directed that her property be placed in an existing trust with Gebhardt as trustee.  The trust estate consisted mainly of five properties, which we will refer to as Lamar, Portland, Marion, Catamount, and the Cabin.  Excluding the Cabin, the trust directed equal distribution of all assets to the heirs.  The Cabin was to be

1

placed in a limited liability company and held in a separate trust, with Gebhardt again as trustee, for the family's use and enjoyment.

¶ 3 The heirs entered into a stipulation regarding the distribution of property from the estate, which the court adopted as an order in July 2021. The stipulation provided that David would receive Lamar, valued at $824,000; Erickson would receive Portland, valued at $781,000, plus a $43,000 equalization payment; and Gebhardt would receive Marion, valued at $608,000, plus a $216,000 equalization payment. It further provided that Catamount would be sold for no less than $399,500, with Gebhardt entitled to purchase it if she wished, and that the sale proceeds would be the source of the equalization payments.

¶ 4 Gebhardt decided to purchase Catamount and took title to it in December 2021. In February 2022, she paid the estate $50,333 for it. She later claimed that she had believed she owed $50,333 based on two offsets: $133,166 for her one-third interest in Catamount, and her right to a $216,000 equalization payment under the stipulation.

¶ 5 In August 2022, Erickson filed a petition to remove Gebhardt as personal representative, alleging that she had breached her

fiduciary duties and violated the stipulation by purchasing Catamount for less than $399,500. The court ordered the parties to mediate the dispute, and the parties jointly retained a certified public accountant (the CPA) to "review . . . the pertinent business and financial data, and other documents relating to the estate."

¶ 6 In December 2022, Erickson filed a motion to compel, explaining that tens of thousands of dollars had been taken from the estate's bank account since the stipulation was approved and that the CPA had requested copies of account statements, deposit slips, and checks to understand how the money was spent or distributed. The court granted the motion and ordered Gebhardt to provide the CPA with all of the requested statements, deposit slips, and checks, along with an explanation of each transaction. Erickson subsequently filed two motions for contempt, alleging that Gebhardt had not fully complied with the court's order.

¶ 7 After a bench trial at which Gebhardt, Erickson, David, and the CPA all testified, the court entered the following findings of fact and conclusions of law:

- Gebhardt continued to collect rent for Portland after it was transferred to Erickson and initially refused to

3

provide Erickson with the lease agreement or contact information for the current renters.

- Instead of selling or purchasing Catamount pursuant to the stipulation, Gebhardt continued to manage it as a landlord from July to December 2021, during which time she collected rent, paid herself for management duties as part of the compensation she was charging the estate, and had the estate pay for maintenance items and her time traveling to and from the property. Although she testified that she did not immediately sell or purchase Catamount because she was busy opening the limited liability company to hold the Cabin, the court did not find her testimony credible.

- Gebhardt transferred Catamount to herself in December 2021 and paid the estate $50,333 for it in February 2022. In doing so, she "transferred estate property to herself at a discounted amount for the sole benefit of herself and to the detriment of" the other heirs.

- Gebhardt paid herself thousands of dollars a month in compensation for the administration of the estate.

Although "there was some testimony regarding the work she did," she did not submit any task logs or other reliable documentation as evidence of her work for the estate.

- Many checks that were issued to Gebhardt for estate expenses had no backup voucher information to support the check or information as to what vendor was being paid.

- Gebhardt failed to provide an accounting for rents collected on the properties that she managed during her appointment as personal representative, and the amounts collected thus could not be verified.

- There was "clear evidence" that Gebhardt "breached her fiduciary duty to the beneficiaries of the estate."

- Gebhardt's conduct "in not timely providing information when requested or as ordered, withholding money of the other [h]eirs, [and] benefiting from a transaction that was in conflict with [c]ourt [o]rders and her duty as a fiduciary" caused damage to the heirs and the estate.

¶ 8     Accordingly, the court removed Gebhardt as personal representative.  It ordered her to "complete the purchase of [Catamount] for the remaining balance of the $399,500 within the next 45 days" or, alternatively, to return the property to the estate for sale to a third party.  In addition, it surcharged her (1) $40,517.18 for payments she made to herself that lacked documentation showing if or how they were related to the estate; (2) $11,062.23 for her own legal fees, as those services did not benefit the estate; and (3) for Erickson's costs and attorney fees, in a reasonable amount to be determined later.  Finally, the court found that Gebhardt was in contempt and, "[a]s a remedial [o]rder," it ordered her to pay the surcharged amounts within sixty days.

¶ 9     Gebhardt requested an extension of time to file a motion for reconsideration, which the court denied in part.  She then filed a motion for reconsideration, and the court denied it.

## II.     Analysis

¶ 10    Gebhardt contends that the district court erred by (1) denying in part her extension request and denying her motion for reconsideration; (2) ruling that the CPA could not provide expert testimony but allowing him to testify as a lay witness and admitting

6

his report into evidence; (3) applying a presumption of fiduciary breach; (4) surcharging her without adequate findings of loss to the estate; and (5) finding that she was in contempt without following the proper procedure. We address each contention in turn.

### A. Partial Denial of Extension Request and Denial of Motion for Reconsideration

¶ 11    Gebhardt contends that the district court erred by denying in part her request for an extension of time to file a motion for reconsideration and then denying her motion for reconsideration as untimely. We agree.

### 1. Additional Background

¶ 12    Under C.R.C.P. 59(a), a party may move for post-trial relief "[w]ithin 14 days of entry of judgment . . . or such greater time as the court may allow pursuant to a request for an extension of time made within that 14-day period." The court entered judgment against Gebhardt on September 29, 2023. Seven days later, on October 6, 2023, Gebhardt filed a motion requesting an extension of time to file a C.R.C.P. 59 motion for reconsideration. She explained that she needed a trial transcript to prepare the motion for reconsideration, and she attached an affidavit from counsel to that

7

effect. She asked the court to give her fourteen days from the time she received the transcript to file the motion for reconsideration.

¶ 13 On December 1, 2023, Gebhardt received the transcript and began preparing her motion for reconsideration. Then, on December 11, 2023, the court denied in part her motion for an extension of time (the December 11 order). It ordered that, if Gebhardt had received the transcript, she must file it with the court and indicate the date she received it. It then ordered that her request for an extension of time

> should be granted in-part but only up to and including the date the transcript was issued to Carol Gebhardt. . . . The date which the transcript was issued will determine if a [m]otion to [r]econsider has been timely filed including the days prior to the [m]otion for [an extension of time] and days that have elapsed since the transcript was issued.

¶ 14 Gebhardt was served with this order on December 12, 2023, and she filed the transcript and her motion for reconsideration the next day. On January 30, 2024, the court denied the motion for reconsideration as untimely. It explained,

> On December 11, 2023, the [c]ourt issued an [o]rder granting the [m]otion for [an extension of time] in part, directing Ms. Gebhardt to file the transcript . . . and noting that "The date

8

which the transcript was issued will determine if a [m]otion to [r]econsider has been timely filed including the days prior to the [m]otion for [an extension of time] and days that have elapsed since the transcript was issued."

The transcript was issued on December 1, 2023. Carol Gebhardt proceeded with filing a [m]otion to [r]econsider but did not do so until December 13, 2023. Therefore, adding the seven days prior to the motion [for an extension of time] and the thirteen days since the transcript was issued[,] a total of 20 days elapsed. . . . C.R.C.P. 59(a) requires that motions for reconsideration be filed within 14 days. Pursuant to the [December 11 order] and C.R.C.P. 59(a) the motion is untimely and therefore denied.

The court further noted that, even if the motion for reconsideration had been timely, it "remained comfortable" with its order and would have denied the motion.

### 2. Standard of Review

¶ 15    "[W]e review a trial court's denial of an enlargement of time within which to perform an act for an abuse of discretion." *Premier Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 9. A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In Interest of Spohr*, 2019 COA 171, ¶ 32.

### 3.    Law and Discussion

¶ 16    Gebhardt argues that the December 11 order constituted an abuse of discretion.  We agree.

¶ 17    First, the order was unclear.  As noted above, C.R.C.P. 59(a) allows a party fourteen days from the entry of judgment to either move for post-trial relief or request an extension of time in which to do so.  But the December 11 order did not mention C.R.C.P. 59 or refer to the fourteen-day deadline under that rule.  The calculation it set forth — "[t]he date which the transcript was issued will determine if a [m]otion to [r]econsider has been timely filed including the days prior to the [m]otion for [an extension of time] and days that have elapsed since the transcript was issued" — was thus difficult to decipher.  Only in the court's subsequent order denying Gebhardt's motion for reconsideration did it explain that it had granted her only *seven* days from the time she received the transcript to file the motion for reconsideration — that is, the fourteen days she requested *minus* the seven days it took her to file the extension request.

¶ 18    Second, even taking into account this explanation, the December 11 order created an uncertain deadline.  The court did

not know if or when Gebhardt had received the transcript. (Indeed, Gebhardt had alerted the court on November 10 that the transcript likely would not be ready for another five weeks.) The December 11 order thus meant that Gebhardt could file a timely motion for reconsideration (1) if she had not yet received the transcript or (2) if she had received it fewer than seven days ago. But because she had in fact received the transcript on December 1, the order amounted to a denial of her extension request.

¶ 19　　Third, there is no dispute that Gebhardt's extension request was timely filed. The court did not mention any concerns about delay, prejudice, or any other factors it considered in ruling on the extension request. In fact, the court appeared to accept Gebhardt's argument, supported by counsel's affidavit, that the transcript was necessary to prepare the motion for reconsideration. Under these circumstances, the court's decision to penalize Gebhardt for "the days prior to the [m]otion for [an extension of time]" was arbitrary. *See Spann v. People,* 561 P.2d 1268, 1270 (Colo. 1977) ("The fact that a trial court has discretion in deciding a matter does not justify exercising that discretion arbitrarily or capriciously.").

¶ 20    Having concluded that the court erred by partially denying Gebhardt's request for an extension of time, we thus conclude that it erred by subsequently denying her motion for reconsideration as untimely.  Accordingly, we reject Erickson's argument that this appeal was not timely filed.  *See* C.A.R. 4(a)(3) (a C.R.C.P. 59 motion must be timely to stay the running of the time for filing a notice of appeal).  But because the district court also considered and rejected Gebhardt's motion for reconsideration on the merits, a remand is not necessary.

¶ 21    We thus proceed to consider Gebhardt's other contentions on appeal.

## B.    The CPA's Testimony

¶ 22    Gebhardt contends that the district court reversibly erred by ruling that the CPA could not provide expert testimony but allowing him to testify as a lay witness and admitting his report into evidence.  We agree that the court's rationale for admitting the CPA's testimony was erroneous, but because his testimony was still admissible for a different reason, we discern no abuse of discretion.  *Deutsche Bank Tr. Co. Ams. v. Samora,* 2013 COA 81, ¶ 38 ("An

appellate court may affirm the trial court's ruling based on any grounds that are supported by the record.").

### 1. Additional Background

¶ 23 The parties jointly retained the CPA in September 2022. In February 2023, he provided the parties with a report proposing one way to equalize the distribution of the estate among the three heirs. His report noted that, based on the documents the parties had provided to him, "[Gebhardt] may not be an accountant (not a criticism, but may give rise to reduced levels of trust/confidence)," and noted specifically that (1) many checks were paid to Gebhardt for expenses that appeared as though they could have been paid directly to the vendor; (2) there was no documentation supporting the monthly fees paid to Gebhardt; and (3) Gebhardt had written and signed the checks paying her monthly fees, while "accounting controls recommend that a different individual sign any checks that [Gebhardt], as executor of estate, would have paid to herself."

¶ 24 Erickson's witness list indicated that the CPA would "testify regarding his audit of the estate accounts and report and opinion on the proposed distribution." But on the morning of trial, Gebhardt filed a motion in limine seeking to preclude the CPA's

13

testimony because, as relevant here, "Erickson [had not] designated him as an expert witness."

¶ 25 At trial, Gebhardt reiterated that Erickson's witness list had not indicated that the CPA was an expert. Erickson responded that Gebhardt had had the CPA's report for months and that she was "well aware" of his credentials, the work he had performed for the parties, the fact that he was going to testify as a witness, and the substance of his testimony. Because Gebhardt was not claiming surprise or prejudice from Erickson's failure to indicate that the CPA was an expert in accounting, Erickson argued, Gebhardt was merely trying to exclude the CPA's testimony "on a technicality."

¶ 26 The district court ruled that, because the CPA had not been "disclosed as an expert," he could not provide expert testimony. But as a lay witness, the court ruled, the CPA could testify about "the numbers that he calculated and what those number[s] say," "his audit," "the estate accounts and [his] opinion on the proposed distribution," "what he did on behalf of both parties," and "what he figured out." The CPA proceeded to testify about the work he had done for the parties and the "red flags" he had noticed based on his training "[a]s a certified public accountant with an auditor

14

background."  He testified that the "accounting state" of the documents he reviewed was so "confusing" that he could not "imagine somebody who is not an accountant really making sense of much of this."

¶ 27    The court also admitted the CPA's report into evidence over Gebhardt's objection.

### 2.    Governing Law and Standard of Review

¶ 28    Under CRE 701, a lay witness may testify to opinions or inferences that are "not based on scientific, technical, or other specialized knowledge within the scope of [CRE] 702."  To determine whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, "the trial court must look to the basis for the opinion."  *Venalonzo v. People*, 2017 CO 9, ¶ 16.  "If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony."  *Id.*  "If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony."  *Id.*

¶ 29    Under C.R.C.P. 26(a)(2), a party shall disclose to other parties the identity of any person who may present expert testimony at trial.  *See* C.R.C.P. 26(a)(2) (listing disclosure requirements applicable to retained and other experts).

¶ 30    The district court has broad discretion in determining the admissibility of evidence based on its relevance, probative value, and prejudicial impact.  *People v. Elmarr,* 2015 CO 53, ¶ 20.  This includes the discretion to rule on the admissibility of expert testimony.  *Kutzly v. People,* 2019 CO 55, ¶ 8.  We review these evidentiary rulings for an abuse of discretion.  *People v. Quillen,* 2023 COA 22M, ¶ 14.

### 3.    Discussion

¶ 31    Gebhardt argues that, because the CPA's testimony was based on his specialized experiences, knowledge, and training, the district court erred by ruling that he could testify as a lay witness.  *See Venalonzo,* ¶ 2.  We agree.  The CPA referred to his training and expressed doubt that "somebody who is not an accountant" could have done the work he performed for the estate.  His opinions were not "based on an ordinary person's experiences or knowledge," *id.*; rather, as he explained, they were based on his training "[a]s a

16

certified public accountant with an auditor background." His testimony was expert testimony.

¶ 32 Although the district court's rationale for admitting the CPA's testimony was incorrect, the court did not abuse its discretion by admitting the testimony because it was still admissible for a different reason. *See People v. Quintana*, 882 P.2d 1366, 1375 (Colo. 1994) (explaining that "[t]he trial court's decision to admit the evidence was correct although an incorrect reason was given for that decision" and that "[a]dmissible evidence does not become inadmissible because a trial court relied on an inappropriate rule of evidence"), *abrogated on other grounds by Rojas v. People*, 2022 CO 8; *cf. People v. Pernell*, 2014 COA 157, ¶ 36 (concluding that statements were not admissible as excited utterances but that reversal was not required because the statements were admissible on an alternative basis), *aff'd on other grounds*, 2018 CO 13. The CPA testified that he was a licensed CPA with thirty years' experience in forensic accounting and that he was the president of a small accounting firm. His testimony was admissible as expert testimony.

¶ 33    Gebhardt does not dispute that the CPA was qualified to testify as an expert — rather, she argues that the district court was required to exclude his testimony because he was not formally endorsed as an expert in violation of C.R.C.P. 26.  But "[a] trial court has considerable discretion in determining whether and what sanctions should be imposed for discovery violations."  *Camp Bird Colo., Inc. v. Bd. of Cnty. Comm'rs*, 215 P.3d 1277, 1290 (Colo. App. 2009).  If sanctions are warranted, "the trial judge must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case."  *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009) (quoting *Nagy v. Dist. Ct.*, 762 P.2d 158, 161 (Colo. 1988)).  A court should impose the least severe sanction that will ensure there is full compliance with the disclosure rules and is commensurate with the prejudice caused to the opposing party.  *Id.*  In determining whether a late disclosure is prejudicial, the question is whether the late disclosure will deny the opposing party an adequate opportunity to defend against the evidence.  *Brooktree Vill. Homeowners Ass'n v. Brooktree Vill., LLC*, 2020 COA 165, ¶ 92.  And "reviewing courts 'must remember that courts "exist primarily

to afford a forum to settle litigable matters between disputing parties,'" and that, unless enforcement of procedural requirements is essential to shield substantive rights, litigation should be determined on the merits and not on formulistic application of the rules." *Pinkstaff*, 211 P.3d at 703 (citations omitted).

¶ 34     Here, the district court's ruling that the CPA could testify as a lay witness, while erroneous, was in essence a decision not to impose sanctions for Erickson's failure to formally endorse the CPA as an expert given the lack of prejudice to Gebhardt. The parties jointly retained the CPA to "review . . . the pertinent business and financial data, and other documents relating to the estate." Gebhardt received the CPA's report four months before trial and does not allege that she was surprised by his opinions. Nor does she allege prejudice from Erickson's failure to indicate that the CPA was an expert or that such disclosure would have affected her trial preparation. She does not dispute that, as Erickson pointed out at trial, she knew the CPA would testify as a witness and knew the substance of his testimony. Because Gebhardt does not argue that any surprise or unfairness resulted from the disclosure violation,

we conclude that the court was not required to exclude the CPA's testimony.

¶ 35    Gebhardt further argues that the district court erred by admitting the CPA's report into evidence. *See Nat'l Can. Corp. v. Dikeou*, 868 P.2d 1131, 1138 (Colo. App. 1993) (a report prepared by an expert is generally not admissible because it is hearsay). But the CPA testified to the contents of his report, and Gebhardt does not allege any prejudice from the admission of the report itself. We thus conclude that any error was harmless. *See People in Interest of R.D.H.*, 944 P.2d 660, 664 (Colo. App. 1997) (concluding that any error in admitting evidence that is cumulative of other admissible evidence is harmless).

## C.    Presumption of Fiduciary Breach

¶ 36    Gebhardt contends that the district court erred by applying a presumption of fiduciary breach. Even assuming, without deciding, that the court erred, we again conclude that any error was harmless.

¶ 37    In its order, the court reviewed the evidence and made detailed factual findings about Gebhardt's handling of the rent and lease agreement for Portland, her delay in selling or purchasing

Catamount and her eventual transfer of it to herself, her credibility, and her payments to herself that were unsupported by documentation. "There is clear evidence as outlined above," the court concluded, "that [Gebhardt] breached her fiduciary duty to the beneficiaries of the estate."

¶ 38     Only after setting forth these findings and reaching this conclusion did the court add the following:

> Moreover, "a plaintiff need only demonstrate a fiduciary relationship and a transfer to or use of trust property by a fiduciary to raise a rebuttable presumption and establish a prima facie case of breach of fiduciary duty." [*In re Estate of Foiles*, 2014 COA 104, ¶ 15 (citing *In re Estate of Heyn*, 47 P.3d 724, 726 (Colo. App. 2002))]. . . . [Gebhardt's] transfers to herself, including her purchase of the Catamount Property, the unexplained checks written to herself and her failure to account for collected rent is prima facie evidence that she breached her fiduciary duty [owed] to the [e]state's beneficiaries. [Gebhardt] failed to overcome the presumption that such transfers were not a breach of her fiduciary duties.

¶ 39     Gebhardt argues that *Foiles* and *Heyn* are distinguishable, and that the presumption applied in those cases — that "a plaintiff need only demonstrate a fiduciary relationship and a transfer to or use of trust property by a fiduciary to raise a rebuttable

21

presumption . . . of breach of fiduciary duty," *Foiles*, ¶ 15 (citing *Heyn*, 47 P.3d at 726) (the *Foiles-Heyn* presumption) — should not apply in this case. While the actions of the fiduciaries in *Foiles* and *Heyn* were prohibited or unauthorized, *see id.* at ¶ 6; *Heyn*, 47 P.3d at 727, Gebhardt argues that her actions in this case were expressly authorized. According to Gebhardt, the stipulation authorized her to purchase Catamount, and the probate code authorized compensation payments for personal representative services. *See* § 15-10-602(1), C.R.S. 2024. As a result, she argues, the district court erred by applying the *Foiles-Heyn* presumption here.

¶ 40 Erickson argues vigorously that Gebhardt's actions were *not* authorized. While the stipulation authorized Gebhardt to purchase Catamount for $399,500, it did not authorize her to continue to manage it as a landlord for six months and then purchase it for $50,333. And while a fiduciary is entitled under section 15-10-602(1) to "reasonable compensation" for services rendered on behalf of an estate, the district court did not find that Gebhardt's payments to herself were reasonable — on the contrary, it found that there was no "reliable documentation" of her work for the

estate. Under these circumstances, she argues, Gebhardt's efforts to distinguish *Foiles* and *Heyn* fail.

¶ 41 We need not resolve this dispute because, even assuming that the district court erred by applying the *Foiles-Heyn* presumption, the error was harmless. *See* C.R.C.P. 61. Before the court even mentioned the presumption, it first reviewed the evidence, made factual findings, and concluded that there was "clear evidence *as outlined above* that [Gebhardt] breached her fiduciary duty." (Emphasis added.) It later introduced the presumption with the word "[m]oreover," indicating that it was treating the presumption as an *additional* ground for concluding that Gebhardt breached her fiduciary duty. Thus, even if we were to disregard the portion of court's order discussing the presumption, the court's earlier conclusion that Gebhardt breached her fiduciary duty would remain.

### D. Surcharges

¶ 42 Gebhardt contends that the district court erred by surcharging her without adequate findings of loss to the estate. We are not persuaded.

### 1. Standard of Review

¶ 43    A district court's judgment following a bench trial presents a mixed question of fact and law. *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 37. We review the court's factual findings for an abuse of discretion and its legal conclusions de novo. *Id.* "When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008).

### 2. Law and Discussion

¶ 44    A fiduciary is entitled to reasonable compensation for services rendered on behalf of an estate. § 15-10-602(1). However, the fiduciary's "entitlement to compensation or costs shall not limit or remove a court's inherent authority, discretion, and responsibility to determine the reasonableness of compensation and costs when appropriate." § 15-10-602(4). If a court determines after a hearing that a breach of fiduciary duty has occurred, "the court may surcharge the fiduciary for any damage or loss to the estate." § 15-10-504(2)(a), C.R.S. 2024.

¶ 45    After concluding that she breached her fiduciary duty, the court surcharged Gebhardt for $40,517.18 in payments that she made to herself for which she was unable to provide "documentation supporting the charges/payments as they apply to the Estate." Gebhardt argues that the court erred by surcharging her because "[t]he mere absence of backing documents . . . cannot establish damage to the estate." She argues that the payments were compensation for her services and that "[t]he estate only suffers damage from such payments to the extent they are unreasonable."

¶ 46    In the absence of supporting documentation, however, the court was not obligated to accept Gebhardt's testimony that the payments she made to herself constituted reasonable compensation for her services to the estate. Rather, the "responsibility to determine the reasonableness of compensation" rested with the court. § 15-10-602(4). As a fact finder, the court could determine that these payments were not for the benefit of the estate or even related to the estate. *See Lawry*, 192 P.3d at 558 (we defer to the district court's credibility determinations). And "we will not reweigh

testimony or reevaluate evidence on appeal." *In re Estate of Romero*, 126 P.3d 228, 231 (Colo. App. 2005).

¶ 47 We thus conclude that the district court did not abuse its discretion by surcharging Gebhardt for payments to herself that lacked supporting documentation.

## E. Contempt

¶ 48 Gebhardt contends that the district court erred by finding that she was in contempt without following the procedure required under C.R.C.P. 107(c). We agree.

¶ 49 As an initial matter, Erickson argues that Gebhardt did not preserve this issue because she "did not object to any procedural violations of C.R.C.P. 107 during the proceeding with the district court nor in her motion to reconsider." But the court twice expressly acknowledged the Rule 107 requirements at status conferences and required Erickson to clarify her intent to pursue contempt and to submit a proposed citation and show cause order. Specifically, the court said, "[I]f you're actually seeking a contempt under Rule 107, you need to let me know if it's punitive or remedial. I have to set it for advisement hearing 21 days after she's served." The court later told counsel, "I didn't get a proposed order or a

citation, so I haven't ruled on that . . . ." Therefore, the issue is preserved. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶¶ 21-23 (issue preserved where the district court recognized and addressed it); *Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 13 (despite ambiguity in the party's presentation, issue was preserved where the district court ruled on it); *see also Gravina Siding & Windows Co. v. Gravina,* 2022 COA 50, ¶ 31 (the merits of a district court's ruling are reviewable on appeal even if the district court addressed the issue sua sponte).

¶ 50     Under section 15-10-505(1)(c), C.R.S. 2024, "[f]or a hearing to determine possible contempt of a fiduciary, the court shall provide notice to the fiduciary as required by rule 107 of the Colorado rules of civil procedure." Rule 107, in turn, distinguishes between two forms of contempt: direct and indirect. *Indep. Reservoir Co. v. Lichter,* 2025 COA 13, ¶ 12. Direct contempt is "[c]ontempt that the court has seen or heard and is so extreme that no warning is necessary or that has been repeated despite the court's warning to desist." C.R.C.P. 107(a)(2). A court can punish such contempt summarily, without notice or a hearing. *Lichter*, ¶ 12.

¶ 51    Indirect contempt, by contrast, is "[c]ontempt that occurs out of the direct sight or hearing of the court." C.R.C.P. 107(a)(3). Before punishing such contempt, the court must provide notice of the charged contempt and a right to a hearing on those charges. *Lichter*, ¶ 12. Under Rule 107(c), a court is required to "order a citation to issue to the person so charged [with contempt] to appear and show cause at a date, time and place designated why the person should not be punished." The citation "shall be served directly upon such person at least 21 days before the time designated for the person to appear." C.R.C.P. 107(c).

¶ 52    Here, the district court failed to follow these steps before trial. It never issued a contempt citation or show cause order identifying the charges. *See People v. Razatos*, 699 P.2d 970, 974 (Colo. 1985) ("In all proceedings for contempt committed out of the presence of the court, the alleged contemner must be given notice of the purpose of the hearing, including the nature of the acts of contempt that he is alleged to have committed."). Nor did the court serve such a citation on Gebhardt as required by Rule 107(c). Accordingly, we vacate the contempt finding and remedial contempt

sanction[1] as procedurally defective and inadequately noticed under

C.R.C.P. 107(c). *See Dooley v. Dist. Ct.*, 811 P.2d 809, 811 (Colo.

1991) (contempt vacated where the citation and show cause order

provided no notice regarding conduct addressed at the hearing or

found contemptuous by the court).

## F.   Attorney Fees

¶ 53    Erickson requests an award of her appellate attorney fees and

costs as a sanction under C.A.R. 38(b) on the ground that

Gebhardt's appeal is frivolous. We deny this request. Gebhardt

prevailed on the first and last issues and her arguments on the

remaining issues were not frivolous. *See In re Marriage of Boettcher*,

2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and

unequivocal cases when the appellant presents no rational

---

[1] The district court ruled that "[a]s a remedial [o]rder [Gebhardt] shall repay the [e]state as [o]rdered above within 60 days of the date of this [o]rder." Remedial contempt is civil in nature and aimed at forcing compliance with lawful court orders. *In re Marriage of Cyr*, 186 P.3d 88, 92 (Colo. App. 2008). "Remedial sanctions for contempt must be supported by findings of fact establishing the contemnor (1) did not comply with a lawful order of the court; (2) knew of the order; and (3) has the present ability to comply with the order." *Id.* The court's order does not explain how the remedial order is tied to the discovery violation, much less make any of these findings.

argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## III.    Disposition

¶ 54    We vacate the contempt finding and remedial sanction.  In all other respects, we affirm the orders.

JUDGE J. JONES and JUDGE BROWN concur.