22CA1841 Marriage of Fortner 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1841
El Paso County District Court No. 21DR32203
Honorable David Prince, Judge

---

In re the Marriage of

Stacey Fortner,

Appellant,

and

Christopher Fortner,

Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE BROWN
Lum and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Law Office of Dailey & Pratt, LLC, Lisa M. Dailey, Joel M. Pratt, Colorado Springs, Colorado, for Appellant

Wheeler Trigg O'Donnell LLP, John M. Sandberg, Denver, Colorado, for Appellee

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dissolution of marriage case involving Stacey Fortner (wife) and Christopher Fortner (husband), wife appeals the district court's denial of her C.R.C.P. 59 motion following the court's entry of permanent orders regarding the division of property. We reverse and remand for further proceedings.

## I. Background

¶ 2     Wife and husband married in 2013 and have two children. In 2019, husband and wife's mother purchased a home for the family to live in together. In 2020, husband moved out of the home and wife and wife's mother continued to live there. In 2021, wife petitioned to dissolve the marriage.

¶ 3     After a hearing, the district court issued a decree of dissolution and permanent orders. As relevant here, the court ordered that "[a]ny remaining student loans will be considered marital debt and the parties will evenly divide liability." The court also ordered that the parties would equally split the marital equity in the home, but it did not determine the value of the home or the marital equity in it because wife's mother did not agree with the parties regarding how much of the equity was marital. Instead, the

court ordered that the parties would "apply" the fifty-fifty division "once the net marital share is realized."

¶ 4        Wife timely filed a C.R.C.P. 59 motion, requesting clarification of the court's order regarding student loans because "[t]he parties disagree about which student loans" were included in the permanent orders, and husband was asking wife to pay half of his outstanding $51,900 student loan debt. Wife argued that husband had not disclosed his student loans as debts subject to allocation as part of the dissolution of their marriage and had not presented any evidence about his loans during the permanent orders hearing. With respect to the sale of the marital home, wife asked the court to set a deadline by which husband would be required to sell the home or bring a partition action. The court declined to amend its ruling.

## II.    Division of Property

¶ 5        Wife contends that the district court erred by denying her C.R.C.P. 59 motion because (1) by failing to clarify its permanent orders, it effectively ordered the parties to equally divide husband's student loans; and (2) it failed to determine the value of the marital home or provide a mechanism for dividing the marital equity. We conclude that the court erred with respect to both contentions.

2

## A. Standard of Review

¶ 6 Under C.R.C.P. 59, a party may move the court to amend its findings or judgment. "A C.R.C.P. 59 motion looks at what has already happened, and it provides a court with an opportunity to correct its mistakes." *Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 49. We review a court's decision to deny a C.R.C.P. 59 motion for an abuse of discretion. *In re Marriage of Bochner*, 2023 COA 63, ¶ 12. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Id.*

## B. Husband's Student Loans

¶ 7 Wife contends that by failing to clarify its permanent orders, the district court effectively ordered husband's student loans to be divided evenly between the parties. She argues that the court erred because (1) she did not have notice or the opportunity to be heard about whether husband's student loans were marital property; (2) husband waived his right to ask for reimbursement for his loans; and (3) the court's finding that husband's student loans were marital property was not based on any evidence in the record. Because we agree that husband waived his right to seek reimbursement of his loans and that the record does not support

the court's implicit finding that husband's student loans were marital property, we conclude that the district court abused its discretion by failing to clarify that only wife's student loans were divided in the permanent orders.[1]

### 1. Wife Preserved Her Contention

¶ 8 As an initial matter, we note that husband disputes that wife preserved her claim, arguing that he presented evidence of his student loans to the district court, but that wife did not object and so cannot now challenge the court's division of those loans. We reject husband's claim that he presented evidence of his student loans to the district court because the record reflects the opposite.

¶ 9 Even so, "a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings." *People in Interest of D.B.*, 2017 COA 139, ¶ 30; *see also In re Marriage of Stradtmann*, 2021 COA 145, ¶¶ 8-10 (concluding that a party was not required to object to a court's oral rulings at the conclusion of a hearing to preserve his appellate arguments); C.R.C.P. 52 ("Neither requests for findings nor objections to findings

---

[1] Because of this disposition, we need not consider wife's due process argument.

rendered are necessary for purposes of review."). Because wife objects to the findings made by the district court in its permanent orders, she did not need to take further action to raise her appellate claims — although we note that wife did raise this issue in her C.R.C.P. 59 motion, providing the court a meaningful opportunity to correct the error.

### 2. The District Court Erred by Not Clarifying that Husband's Student Loans Were Not Marital Property

¶ 10　　In dividing a marital estate, a district court must determine if the property at issue is marital or separate property. *See LaFleur v. Pyfer*, 2021 CO 3, ¶ 63. "Generally, property acquired by either spouse during the marriage is presumed to be marital property." *In re Marriage of Seewald*, 22 P.3d 580, 586 (Colo. App. 2001); *see* § 14-10-113(3), C.R.S. 2024. Whether a purported asset constitutes marital property is a mixed question of fact and law. *In re Marriage of Cardona*, 2014 CO 3, ¶ 9. We defer to the court's findings of fact unless they are not supported by the record, but we review the court's legal conclusions de novo. *Id.*; *In re Marriage of de Koning*, 2016 CO 2, ¶ 17.

¶ 11 In its permanent orders, the district court ordered that "[a]ny remaining student loans will be considered marital debt and the parties will evenly divide liability." By ordering the parties to equally divide "[a]ny remaining student loans," the court necessarily found that "[a]ny remaining student loans" were marital debt. *See* § 14-10-113(1) (the court is required to set aside to each spouse their separate property and divide only the marital property). In her C.R.C.P. 59 motion, wife asked the court to clarify that only her student loans were to be divided. The court denied wife's C.R.C.P. 59 motion, reasoning that it "applied a standardized allocation of treating debt incurred during the marriage as joint to be divided equally" because it "received limited information at [the] hearing about the parties['] student loans."

¶ 12 But the record reflects that wife disclosed her student loans, testified to the specific part of her student loan debt that was incurred during the marriage, and requested that the court divide only the marital portion of that debt evenly. In her sworn financial statement, wife listed $23,932 in student loan debt. At the permanent orders hearing, wife introduced a student loan summary statement corroborating the total outstanding balance and

reflecting two disbursements in 2016 with a combined outstanding balance of $5,297.65. Wife testified that she incurred the 2016 loans to go to school for medical coding so she could increase her earning capacity and contribute to the marriage. She asked the district court to divide the $5,297 evenly between the parties.

¶ 13    In contrast, husband did not disclose any student loans in his sworn financial statement. At the permanent orders hearing, husband testified that the only outstanding marital debts were a Children's Hospital bill for $600 and a University of Colorado Health bill for $900.[2] He did not say that he had any outstanding student loans that should be considered marital debt. Husband certainly did not disclose more than $50,000 in student loan debt or present evidence that the debt was incurred after the parties married in 2013. In fact, husband made only two references to a student loan during his testimony.

¶ 14    First, when describing how the parties divided the furniture and household goods when husband moved out, husband said he

---

[2] He also sought reimbursement for an approximately $1,000 debt he had already paid to LVNV Funding LLC, arguing that wife and wife's mother had incurred that debt.

7

took with him "a TV stand which I paid for out of a school loan." Husband did not testify as to whose "school loan" was used to pay for the TV stand, when the loan was incurred, or whether there was any outstanding balance associated with that loan.

¶ 15    Second, husband said he was "not benefiting from [wife's] education in any way going forward" and asked the court to order that wife be solely responsible for her student loan. Yet in his proposed property division spreadsheet, husband listed the total amount of wife's outstanding student loan debt — $23,932 — as marital debt. He did not identify any of his own student loans in the spreadsheet.

¶ 16    Based on this conduct, we conclude that husband waived his right to have the court divide his student loans as marital debt. "Waiver is the intentional relinquishment of a known right." *In re Marriage of Hill*, 166 P.3d 269, 273 (Colo. App. 2007). Waiver can either be express or implied. *Id.* An express waiver occurs when a party "states its intent to abandon an existing right." *Id.* An implied waiver occurs "when a party engages in conduct which manifests an intent to relinquish the right or acts inconsistently with its assertion." *Id.* To reach the threshold needed for implied

waiver, the party's "conduct must be free from ambiguity and clearly manifest the intent not to assert the benefit." *Id.*; *see also In re Marriage of Robbins*, 8 P.3d 625, 630 (Colo. App. 2000). Although husband never affirmatively stated an intent to abandon his claim that his student loans were marital property subject to allocation in the divorce, his conduct clearly manifested that intent.

¶ 17 Moreover, because there is no evidence in the record to support a finding that husband's student loans were incurred during the marriage, the district court's implied finding that the loans were marital debt subject to allocation in the dissolution proceeding was clearly erroneous. *See In re Marriage of Cardona*, ¶ 9; *In re Marriage of Salby*, 126 P.3d 291, 298 (Colo. App. 2005) (The court's "factual findings may not be disturbed on appeal unless they are clearly erroneous and unsupported by the record.").

¶ 18 On this record, only the marital portion of wife's student loans should have been divided between the parties. Consequently, it was manifestly arbitrary, unreasonable, and unfair for the district court to refuse to clarify this point as wife requested. Thus, we conclude that the court abused its discretion by denying wife's C.R.C.P. 59 motion on this basis. We remand for the court to enter an order

clarifying that only the marital portion of wife's student loans ($5,297.65) is to be divided equally between the parties.

## C. The Marital Home

¶ 19     Wife contends that the district court erred by denying her C.R.C.P. 59 motion because it failed to (1) value the marital home as of the date of decree or (2) provide a timeline or process for the parties to realize the marital equity in the home. We agree.

### 1. Additional Background

¶ 20     In their joint trial management certificate, the parties stipulated that the fair market value of the marital home was $367,000, the outstanding mortgage balance was $238,898.87, and the net equity was $128,101.13. But they acknowledged that not all of the equity was marital because wife's mother jointly owned the home as a tenant in common with husband.

¶ 21     Husband represented that wife's mother believed she was entitled to a larger share of the equity because she paid the mortgage after husband moved out of the home. He indicated that he and wife's mother had retained attorneys to pursue a partition action to determine their respective contributions and argued that there was no way to know the amount of marital equity to divide

between the parties until the partition action was complete. Husband asked the court to order that the parties divide the marital equity fifty-fifty after the net proceeds were determined in the partition action.

¶ 22    For her part, wife argued that the court should value the marital home as of the date of the permanent orders hearing. She acknowledged that a partition action "may be filed in the future" but explained that no partition action was pending at the time. She asked the court to accept the parties' stipulations as to the equity in the home. She argued that her mother was entitled to half of the net equity in the home, leaving $64,050 of marital equity. And she asked the court to award her half of that figure because she had contributed substantially to the mortgage payments before and after the parties physically separated.

¶ 23    In its permanent orders, the court explained that

> [t]he ownership of the marital home is unusual. The home was purchased by [husband] and [wife's] mother. Those two people remain as the title owners of the marital home. The parties agreed that [husband] should eventually be removed from title to the marital home . . . . The parties even appear to agree as to what they think the value of the marital home should be. However, the home is

11

> owned in part by a third party . . . . Thus, what will become of title and what value the marital share will yield are unknown at this time.

The court noted that "[a] partition action is contemplated" and reasoned that determining a "firm value" would be "too speculative and subject to abuse under the circumstances." It ordered that the parties evenly divide the marital equity "once the net marital share is realized."

¶ 24    In her C.R.C.P. 59 motion, wife represented that husband had not yet listed the marital home for sale or initiated a partition action. She asked the court to require husband to sell or bring a partition action for the marital home within six months because her portion of the marital equity would otherwise be substantially impacted. The court declined to impose a deadline for husband to partition or sell the marital home, reasoning that "a third party's interests and incentives are involved so the [c]ourt is reluctant to impose partial remedies given that only two of the three necessary parties are before it."

## 2.  Wife Did Not Waive Her Contention

¶ 25    Husband contends that wife waived her right to object to the court's decision to defer valuing the marital home.  He argues that by requesting through her C.R.C.P. 59 motion that the court set a deadline for a sale or partition action, wife abandoned and waived her earlier argument that the court should value and divide the marital equity in the home at the time of the decree.  But wife only asked the court to set a deadline for husband to sell or bring a partition action after the court deferred valuing the home as of the date of the decree.  Wife's request for additional orders to effectuate the court's property division did not clearly manifest an intent to relinquish her right to object to the court's decision not to value the home as of the date of the decree.  *See Hill*, 166 P.3d at 273.

## 3.  The District Court Erred by Failing to Value the Marital Home or to Determine the Method for Its Equitable Distribution

¶ 26    As to the merits of wife's argument, section 14-10-113(5) provides that "property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree."  Once a court deems property to be marital, it must value it.  *In re Marriage of Jorgenson,*

143 P.3d 1169, 1172 (Colo. App. 2006); *see also Walton v. People*, 2019 CO 95, ¶ 13 ("'Shall' is mandatory unless there is a clear indication otherwise.").

¶ 27　Here, the value of the home was undisputed. The parties agreed that the net equity in the home was roughly $128,100. Yet the district court made no finding as to the value of the home as of the date of the permanent orders hearing.

¶ 28　We acknowledge that the court was presented with unusual circumstances in this case given that the home was jointly owned by a third party not subject to its jurisdiction. We also acknowledge that, because the property owners disputed how the equity should be divided between them, the court may not have been able to determine the precise value of the *marital* equity in the home. But the circumstances did not preclude the court from valuing the home at the time of the hearing. *See In re Marriage of Price*, 727 P.2d 1073, 1077 (Colo. 1986) (the court properly valued the marital property as of the date of the decree even though it divided the property two years after the decree); *cf. In re Marriage of Grubb*, 745 P.2d 661, 666 (Colo. 1987) (explaining that valuing a vested but

unmatured pension plan may require an alternative method due to the uncertainty of whether an employee will reach retirement).

¶ 29     By deferring the determination of value to a later date, the court left open the possibility that husband might benefit from appreciation in the home's value after the decree of dissolution enters.  Husband is not entitled to share in any increase in value, nor is he obligated to share in any decrease in value, after the marriage is dissolved.  *See In re Marriage of Wormell*, 697 P.2d 812, 814 (Colo. App. 1985) ("[H]usband is not entitled to share in the home's future appreciation because property is valued at the time of the dissolution hearing or as of the hearing on property division, whichever occurs first."); *In re Marriage of Wells*, 850 P.2d 694, 697 n.6 (Colo. 1993) ("[T]he character and value of the property are established as of the date of the decree of separation or dissolution and cannot be changed or modified because of an increase in value or change in character after that date . . . .").  The court erred by not setting the anchor value from which the marital equity could be computed and divided between the parties.

¶ 30     In addition, it is generally improper for the trial court to continue joint property ownership between divorced spouses.  *In re*

*Marriage of Paul*, 821 P.2d 925, 927 (Colo. App. 1991). Instead, in the interests of public policy, a court should "leave to each party a definable or ascertainable portion of at least some of the attributes of ownership." *Id.* A division of property is effective if "the mechanics of any fractional division can be accomplished within a reasonable time." *In re Marriage of Simon*, 856 P.2d 47, 49 (Colo. App. 1993).

¶ 31    A division of this court applied these principles in *Paul*, 821 P.2d at 927, and reversed a district court's order deferring the division of a marital asset. In that case, wife was a partner in a partnership formed with her two brothers. *Id.* The district court found that wife's partnership interest was a marital asset and ordered that when wife's interest in the asset was sold, the proceeds would be divided between the parties. *Id.* But because wife and her brothers had exclusive control of the business operations, the division reasoned that the court's order was "illusory" because husband "has no assurance that he will ever receive any income or ultimate distribution of the partnership interest." *Id.* The division reasoned that, "[i]n this posture, it is likely that continued conflict between the parties will persist, thus frustrating their abilities to

proceed with their separate lives." *Id.* The division remanded for the court to consider other ways in which it could allocate to husband his share of the marital asset. *Id.* at 928; *see also In re Marriage of Gehret*, 580 P.2d 1275, 1276-77 (Colo. App. 1978) (reversing "illusory" district court order that marital interest in business would be divided equally "[i]n the event of the sale" of a business).

¶ 32    The district court's order here is similarly illusory in that wife has no assurance that she will ever receive a distribution of her interest in the marital home. Although husband is on the title to the home and has the ability to realize this interest through a partition action, wife is not similarly situated. *Cf. Paul*, 821 P.2d at 927. The order here "left all discretion as to the sale of [the home] in the husband, and it appears, as well, that its effect might be to award a share in property acquired after the dissolution." *Gehret*, 580 P.2d at 1277. In this way, the court did not divide the marital estate as it is required by statute to do. *See id.*

¶ 33    For this additional reason, we reverse the district court's order denying wife's C.R.C.P. 59 motion and remand the case to the district court. On remand, the court must set the net value of the

marital home as of the date of the decree — notably, the only value supported by the record evidence is $128,100 — and determine a method for equitably distributing the asset. If it is to be fractionally divided, "the mechanics must be such that the division, however done, can be effectuated 'within a reasonable time,' after the proceedings." *Id.* (citation omitted). We recognize that the district court cannot order husband to sell the home because such an order would impact the interest of a third party. But we see no reason why the court cannot order husband to pursue the contemplated partition action to liquidate the marital share of equity in the home. *See id.* (the division of marital property "might well precipitate liquidation" of the asset). Of course, we do not instruct the district court to equitably divide the marital home in any particular way; we only instruct that it must, in fact, divide it.

### III. Disposition

¶ 34 We reverse the district court's order denying wife's C.R.C.P. 59 motion and remand the case for the court to (1) clarify that only $5,297.65 of wife's student loans are to be divided between the parties; (2) set the net value of the marital home as of the date of permanent orders at $128,101; and (3) enter additional orders

18

regarding how the parties will equitably distribute the marital home within a reasonable time. The portions of the permanent orders not challenged on appeal remain undisturbed.

JUDGE LUM and JUDGE BERGER concur.